MOBILE, JACKSON & KANSAS CITY RAILROAD COMPANY *v.* MARY A. HICKS ET AL.

[46 South., 360.]

1. RAILROADS.  *Death of employe.   Negligence.   Res ipsa loquitur.*

Where decedent, a section foreman in defendant's employ, while walking along a piece of new road which had not been ballasted, was killed by the derailment of a mixed passenger and freight train, the first train carrying passengers ever run over the road, as it was passing him at the rate of thirty to forty miles an hour though the schedule for freight trains was fifteen miles per hour, the doctrine of "*res ipsa loquitur*" was applicable, and the facts sufficiently showed that decedent's death was due to the incompetency of the engineer of the train, for which defendant was liable.

2.  DEATH.  *Damages.   Measure.*

Where a railroad section foreman at the time he was killed was a man twenty-eight years old, in good health, industrious, and of good habits, and left a widow twenty-seven years old, and four children, from two to eight, respectively, a verdict awarding them $7,500 for his wrongful death was not excessive.

3. MASTER AND SERVANT.  *Death of servant.   Railroads.   Accident.*

Where the death of a railroad section foreman while walking along the side of a new unballasted track was caused by derailment of a mixed train being negligently run over the road at a rate nearly three times its schedule, the injury was not due

91 Miss.—18

to pure accident, under the rule that, in order that a party may be liable for negligence it is not necessary that he should have contemplated or anticipated the particular consequences which ensued or the injuries sustained; it being sufficient if by the exercise of reasonable care he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been anticipated.

4. CONSTITUTIONAL LAW. *Equal protection of laws. Fellow servants. Const.* 1890, § 193; *Code* 1892, § 3559; *Amendt. XIV, Const, U. S.*

Const. 1890, § 193 (Code 1892, § 3559), providing that every railroad employe shall have the same rights and remedies for an injury suffered by him through the act or omission of the corporation or its employes as are allowed by law to other persons not employes, where the injury results from the negligence of a superior agent or officer, or of a person in another department of labor from that of the party injured, or of a fellow servant on another train of cars or one engaged about a different piece of work, are not in violation of the fourteenth amendment of the federal Constitution; the nature of the business of railroads being inherently dangerous.

5. MASTER AND SERVANT. *Injuries to servant. Code* 1892, § 3559. *Applicability to servant.*

Where decedent, a railroad section foreman, was killed while walking along the side of the track by a freight car from a passing train falling over on him before the train could be stopped, after derailment resulting from the engineer's negligence in operating the train over certain unballasted track at an excessive rate of speed, decedent was within the class of employes entitled to the benefit of Code 1892, § 3559, abrogating the fellow servant rule with reference to certain employes of a railroad corporation injured as the result of the negligence of a fellow servant engaged in another department of labor or about a different piece of work.

6. SAME. *Scope of statute.*

Const. 1890, § 193 (Code 1892, § 3559), exempting certain railroad employes from the application of the fellow servant rule, protects the injured employe not against what the master is doing, but against what his coemployes of certain kinds are doing; the inquiry being, not whether he is at the time operating a train and thus exposing other employes to a peril, but whether in the discharge of his duty he is where the negligence of other coemployes operating the train may injure him.

7. SAME. *Presumption of negligence. Code* 1906, § 1985. *Application.*

Where, in an action for death of a railroad section foreman by the negligence of an engineer, decedent was within the exemption from the fellow servant rule prescribed by Const. § 193 (Code 1892, § 3559), he was entitled to the statutory presumption of negligence raised by Code 1906, § 1985, declaring that, in all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotive or cars of the company shall be *prima facie* evidence of negligence on the part of the servants of the company, and that the section shall apply to passengers and employes.

8. SAME. *Defense. Fellow servant. Burden of proof.*

That no recovery can be had for injuries to a servant, because they were due to the negligence of a fellow servant, is matter of defense, the burden of proof of which is on defendant.

9. DEATH. *Actions. Right to sue. Personal representative. Legal representatives. Separate actions. Code* 1906, § 721.

Under Code 1892, § 3559, providing that railroad companies liable for the death of their servants, caused by the negligence of fellow servants in certain instances, and declares that, where death ensues, the legal or personal representative of the person injured shall have the same rights and remedies as are allowed by law to the representatives of other persons, and that the section shall not deprive an employe of a corporation, or his legal or personal representative, of any right or remedy that he now has by law, and Code 1906, § 721, providing that, whenever death is caused by any negligent act which would, if death had not ensued, have entitled the party to recover damages, and the deceased person shall have left a widow or children, or both, the person or corporation, or both, that would have been liable had death not ensued, and the representative of such person or corporation, shall be liable for damages notwithstanding the death; that the action may be brought in the name of the widow for the death of the husband, or in the name of the child for the death of a parent, or all the parties may join; but that there shall be but one suit for the same death, which shall inure to the benefit of all parties concerned, a widow and children having brought an action for the alleged wrongful death of the husband and father, a railroad employe, the widow is not entitled to maintain another action as her husband's administratrix to recover damages sustained by the husband himself.

10. APPEAL. *Review. Harmless error. Consolidation of actions.*

Where a widow and children sued as the legal representatives of

the husband and father for his wrongful death, and the widow
also sued as his administratrix for damages sustained by de-
cedent himself, only one of such suits being maintainable, and
all of the damages sustained being recoverable in either, de-
fendant was not prejudiced by a consolidation of the two suits.

11. Death. *Constitutional provisions. Death of servant. Remedies.*

Const. 1890, § 193, defining specified cases in which the servant
does not assume the risk of negligence of fellow servants, nor
of defective machinery or appliances, and declaring that, where
death ensues from an injury to an employe, the legal or personal
representatives of the person injured shall have the same rights
and remedies as are allowed by law to such representatives of
other persons, is self-executing, so that whatever enlargement or
restriction is applied to the rights and remedies of persons not
employes for injuries is also applicable *propria vigore* to fellow
servants in the specified cases.

12. Same. *Right to sue. Action by widow and children. Code 1906,*
§ 721.

Under the express provisions of Code 1906, § 721, authorizing a
recovery for wrongful death, and declaring that the act shall
apply to all personal injuries that servants or employes receive
in the service or business of the master, where such injuries
result in death, and declaring that the action may be brought
by the deceased servant's widow and children for the recovery
of damages sustained, an action for the death of a railroad
employe, who leaves a widow and minor children, can only be
brought by them.

From the circuit court of Newton county.

Hon. Geo. H. Etheridge, Special Judge.

Mary A. Hicks and her children, appellees, as the widow and
children of Ray Hicks, deceased, sued the Mobile, Jackson &
Kansas City Railroad Company, appellant, for the wrongful
killing of deceased while in the service of the defendant as a
section foreman. Mrs. Hicks also sued as administratrix of
her deceased husband for damages sustained by him, and, the
two suits having been consolidated, a trial was had in the circuit
court, resulting in a judgment for plaintiffs in the sum of
$7,500; from which the defendant appealed to the supreme
court.

The opinion of the court states the controlling facts of the case.

*May, Flowers & Whitfield,* for appellant.

To recover damages arising out of the occurrence two suits were filed— one by the administratrix, and another by the widow and children. The administratrix bases her claim upon the allegation that the wreck was caused by the negligence of the engineer in charge of the locomotive (1) in running at too great a speed, and (2) in trying to check the train suddenly when it was running at the high rate of speed; it being averred that the deceased and the engineer were in different departments of labor and engaged about different pieces of work. The second declaration, that by the widow and children, is based upon the alleged negligence of the master itself in six particulars. The master is charged to have been negligent (1) in " knowingly employing and putting in charge of said train an inexperienced, incompetent, unskillful, and reckless engineer, as the result of which the train was run at a dangerously rapid rate of speed, especially dangerous in view of the condition of the track "; (2) " in knowingly employing and putting in charge of the train an inexperienced, incompetent, and reckless engineer, as a result of which the freight train, running at a very rapid rate of speed, was through the unskillfulness of the engineer suddenly attempted to be checked "; (3) " in allowing the box car which first jumped from the track to be equipped with trucks of an improper gauge, so that the wheels did not properly fit the tracks "; (4) " in allowing the flange of the wheel of the box car which first jumped from the track to become worn, defective, and unsafe "; (5) " in fixing a schedule for said train, which in view of the condition of its railroad was excessive and dangerous "; and (6) " in that the car which jumped first from the track was not equipped with good and sufficient brakes and brake shoes, so that its motion and speed could be controlled, and because the said train and said car had

not been properly equipped with air brakes, so that the speed and motion of the train could be regulated." It will be observed later that the testimony was confined altogether to allegation No. 1 in the declaration filed by the administratrix, to the effect that the train was being run at a reckless and dangerous rate of speed by the engineer. There are several important questions involved in this case, and they are presented by the record in every way that counsel for this appellant knew how to raise them. They will be discussed without regard to the manner or order in which they were raised.

(1) This casualty in which Mr. Hicks lost his life was an accident pure and simple. It was a thing that could not have been foreseen. If the company or one of its servants was negligent, this result was not a consequence of such negligence that could or should have been anticipated. The negligence, if any there was, was not the probable nor proximate cause of the injury. If the law requires a railroad company to equip its cars carefully and maintain safe tracks, and to employ skillful and efficient operators, and requires such operators to carefully handle the trains and to run at safe rates of speed, such laws are made for the protection of persons who ride on the trains or who may be necessarily on the tracks. Such laws are not made for the protection of people who may be standing near the tracks, and who, by violation of such laws, might be injured by derailed trains. A proximate cause of an injury is one which should be expected to bring about such injury, and which, in the ordinary course of things, does result in such injury. This, perhaps, is the only instance in the history of railroad operation in Mississippi where one was killed by a derailed train. The people on the train are at the mercy of the engineer. The people on the other trains using the same track are at his mercy. People who are necessarily on the track may be dependent upon his careful performance of his duties. It is for their protection that the law requires him to be skillful and careful. This railroad is about four hundred miles long. It

could never have been anticipated that a train running from one end to the other would jump the track at the point where Mr. Hicks happened to be standing in Newton county and kill him.

(2) The suit by the administratrix is based upon the alleged negligence of a fellow servant in another department of labor. The deceased was a section foreman. He was with his gang working on the track, and had stopped for dinner. He was sitting or standing near the track, when he was not at work, and part of a passing train was derailed, and a car which had jumped the track fell on him and killed him. His administratrix sues on the ground that the engineer running the train was guilty of willful carelessness and negligence and recklessness, in that he was running the train at a rate of speed that was very dangerous. She says that it was especially dangerous because of the fact that the track was new and not ballasted, and that the said engineer committed another act of negligence in attempting to check the speed of the train very suddenly. It is charged that the sudden checking of the train when it was running at such a high rate of speed caused the box car to jump from the track, pulling with it two or three other box cars, one of which fell on the said Hicks, deceased. The suit is based upon § 193 of the Constitution, as it appears in § 3559 of the Annotated Code of 1892.

We assume here that § 3559 of the Code (for the purposes of this suit) is in force as it was originally written in the Code of 1892. It was attempted to amend it by ch. 87, p. 97, Laws of 1896, and by ch. 66, p. 84, Laws of 1898. The last amendment — that is, ch. 66, p. 84, Laws of 1898 — was declared unconstitutional by the supreme court in *Ballard* v. *Oil Company,* 81 Miss., 507; 34 South., 533; 62 L. R. A., 407; 95 Am. St. Rep., 476. This means, too, that ch. 87, p. 97, of the Laws of 1896, is also unconstitutional. The two acts amending § 3559 of the Code having been declared null and void, the said section stands as it was before these attempted amendments.

Chapter 66, p. 84, of the Laws of 1898, was declared unconstitutional as being in violation of article fourteen of the Constitution of the United States, which prohibits the states from denying to any person within its jurisdiction the equal protection of the laws.   The two grounds on which the court held that the said act denied equal protection of the laws to certain persons were that " it imposes restrictions upon all corporations, without reference to any difference arising out of the natures of their businesses," and " it imposes restrictions upon all corporations . . . which are not imposed upon natural persons."   The said act of 1898 undertook to extend the fellow servant rule to the employes " of any corporation."   The court said, in the first place, that it would not be giving all corporations the equal protection of the law to apply the strict rule provided by § 193 of the Constitution to them in their relations with their employes, unless they were all engaged in the same or similar kind of business; that all corporations do not conduct the same kind of business, and occupations cannot be classified reasonably, and for purposes of special legislation, by reference to the character of the persons owning and conducting them.   One corporation may be engaged in a dangerous business, and another in a business which requires employes to run no risk whatever.   The degree of care which a corporation operating a dangerous business is required to exercise might not reasonably be required of one operating another business not necessarily dangerous at all.   The reasonableness of the fellow servant rule cannot depend upon the character of the employer whether a natural or artificial person.   To put all corporations in the same class and provide a stringent rule to be applied to all of them is unjust and unequal legislation.   The court accepted as being sound the holding of those courts which have declared that every classification for the purpose of special legislation of this kind must be based on " some difference bearing a reasonable and just relation to the act in respect to which the classification is proposed."   The court held that the

fellow servant rule cannot be extended to corporations as such while at the same time it is not made to apply to individuals engaged in the same kind of business. Our court rejected the holding of some of the courts to the effect that corporations, being artificial persons created by the state, may be forced to accept any legislation which the state sees fit to impose upon them.

Since the court has declared the act of 1898 unconstitutional on the ground that the fellow servant rule cannot be extended to corporations in general, without extending it also to individuals engaged in businesses of the same kind, it is impossible to see how § 3559 itself could be held constitutional. If the fellow servant rule cannot be enforced against corporations in general, unless it is also made to apply to individuals engaged in businesses of the same kind, under the same circumstances, how can it be enforced against railroad corporations, unless it should also be enforced against individuals owning and operating railroads? In the *Ballard case* our court intimates that, if the supreme court of the United States meant to say that legislation of this kind aimed at corporations engaged in the railroad business could be upheld, although it did not apply to individuals engaged in the railroad business, it would not be easy to understand the reason for such holding. In *M. P. Ry. Co.* v. *Mackey,* 127 U. S., 205; 8 Sup. Ct., 1161; 32 L. Ed., 107, the supreme court of the United States passed upon a statute of Kansas which read as follows: "Every railroad company organized or doing business in this state shall be liable for all damages done to any employe of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers, or other employes, to any person sustaining such damage." The court said in that case that the Kansas statute was not in violation of the fourteenth amendment. But the court did not discuss it with respect to its discriminations between corporations and individuals engaged in the railroad business. On the other hand, it treated the statute just as if it

embraced all persons of whatever kind engaged in the railroad business. Mr. Justice FIELD, for the court, said, among other things: " Such legislation is not obnoxious to the last clause of the fourteenth amendment, if all persons subject to it are treated alike under similar circumstances and conditions in respect both to the privileges conferred and the liabilities imposed. In *M. & St. L. Ry. Co.* v. *Herrick,* 127 U. S., 210; 8 Sup. Ct., 1176; 32 L. Ed., 109, the supreme court of the United States, speaking through the same justice, upheld an Iowa statute which provided that " every corporation operating a railway shall be liable for all damages sustained by any person, including the employes of such corporations, in consequence of any negligence of agents or by any mismanagement of the engineer or other employes of the corporation." But in this case the court failed to discuss the question as to whether an illegal discrimination is made by a law which applies the new fellow servant rule to corporations engaged in a railroad business, but does not make it apply to individuals engaged in the same business.

(3) If the court should hold that this casualty, in its nature, can be regarded as nothing more than an accident, pure and simple, of course appellees must fail. This is true, without regard to any other question in the case. If the court should hold that § 3559 of the Annotated Code of 1892, under which this suit was brought, is violative of the fourteenth amendment of the Constitution of the United States, such a finding would determine the controversy against the appellees, because no proof was offered in the court below to sustain any allegation in the declaration filed by the widow and children, and the evidence that was offered tended only to prove, if it tended to prove anything at all, that the engineer was negligent in running the train at too great a rate of speed. But we say, further, that the appellee must fail, although the court should be of the opinion that the casualty which resulted in the death of Hicks was not a mere accident which could not have been

anticipated, and although the court should say that § 3559 of the Annotated Code of 1892 is in harmony with the said provision of the Constitution of the United States.

The said § 3559, even as construed by our court, as far as it has been necessary to construe it up to date, has been held not to operate in favor of all employes of railroad corporations. The mere fact of being an employe of a railroad corporation does not, in itself, entitle one to the benefit of the said section, and to the benefit of § 193 of the Constitution. Our court has upheld it up to date when it applies to railroad corporations and does not apply to corporations engaged in other businesses, because railroad business is dangerous, and is in that respect different from a great many other businesses. An employe of a railroad corporation cannot get the benefit of the said provision unless, besides being a railroad employe, he is engaged about a kind of railroad business that is hazardous. It is said in the case of *Bradford Construction Company* v. *Heflin,* 88 Miss., 362; 42 South., 174: " It manifestly never was the purpose of the Constitution makers in said § 193 to give to all employes of railroad corporations the remedies therein provided. They meant such employes as were imperiled by the hazardous nature of the business of operating railroad trains. The very ground upon which the United States supreme court all along held that such legislation was constitutional was that the nature of the business of operating railroad cars is inherently dangerous. It would be absurd to hold that there was any inherent danger in discharging the duties of ticket agent, or telegraph dispatcher, or many other offices in which employes of railroads are at work. It would be equally absurd to hold that employes of a railroad corporation engaged in the construction of a roundhouse, or in any other work not at all connected with the operation of cars, were engaged in work inherently dangerous. They would be in no more danger than any like employe of any other master. In short, the reason which sustains said § 193 of the Constitution being the inherent danger attending

the actual operation of railroad trains, the remedy must be limited to those employes whom such danger imperils."

A trackman is in no more danger from the operation of trains than is a telegraph operator. Both usually work along the track, and are near the track when trains pass. The telegraph operator frequently has his office up within a few feet of the passing train. If the train should be derailed when passing his office, and should run into his office and injure him, could such operator recover under § 193 ? Is there anything " inherently dangerous " in track work ? If any trackman is imperiled by a running train, is it not from his own selection of his position ? Is there any duty which any trackman has to perform which fastens him to the track, or makes· him depend upon the safe and careful operation of running trains ? There is no more danger in building a track for a railroad corporation than in building a bridge for a county. There is no more danger in repairing track than there is in building a roundhouse. The mere fact that this one man was injured by a running train which was derailed does not establish a dangerous character as attaching to his employment. It certainly is not as dangerous to repair a track, and stand near the track when trains pass, as to fell trees in the woods, or to work around a sawmill, or to build houses. There is nothing " inherently dangerous " in it.

The statute cannot be consistently applied to the case of employes, except those who take part in the actual operation of trains, or whose duties expose them to dangers from the actual operation of trains. The dangerous part of the railroad business, which justifies the classification of it as a dangerous business, is the running of trains. The statute only applies to those who take part in such dangerous business, or whose duties expose them to such dangers. Those who are on the trains being operated are certainly within the statute. Those whose duties place them upon the track and make their safety depend upon the safe handling of trains are also within its provisions.

If trackmen are within the statute, then bridge gangs are, and then persons building depots along the said tracks must necessarily be, and other employes, whose offices are near the track, must also come within its provisions. Trains do not usually jump the track. This does not occur so often as to make an employment dangerous, because it is to be carried on near the track, and subjects those engaged in it to danger from derailed trains. The danger of railroading does not arise out of the possibility or frequency of derailments. It is possible that this court never before had to deal with a case of an injury to one standing near the track, caused by a derailed train.

Since this court has said that the said § 193 can be harmonized with the fourteenth amendment of the Constitution of the United States only upon the theory that the railroad business is " inherently dangerous," such harmony can be preserved only by limiting the application of the section still further, as the cases arise, by extending it to those cases only of persons who are engaged in a railroad employment that is in itself " inherently dangerous." Conductors, engineers, brakemen, flagmen, and firemen are all clearly within the rule, and are entitled to the benefit of the said section. Their duties require them to be on and about running trains and to assist in their operation. If anything happens to the train, they must suffer. Their business is " inherently dangerous." Their safety depends upon the safe moving of the trains. Switchmen, hostlers, and others whose duties do not require them to be on running trains, but who are bound in the performance of their duties to be on or close to the track, are also clearly within the protection of the said section. These persons can no doubt recover for the negligence of other persons in every department of labor and about every piece of work, although such other employes or officers themselves are not engaged in any employment that is " inherently dangerous."

To determine whether the person injured is entitled to the protection of § 193 of the Constitution, we should not look at

the character of the employment of the person whose negligence caused the injury, but to the character of the employment of the person who was himself injured. A train dispatcher, in his office some distance away from the track, is clearly not within the provisions of said section, as our court has said, even before a case arose which made it necessary for the court to say it. The court said, also, that a ticket agent or telegraph dispatcher is clearly not within the provisions of the said section, and that persons engaged in the construction of a roundhouse are not within the provisions of the said section. But, while these persons are not within the provisions of the said section themselves, their negligence may cause injuries to persons who are within the protection of the constitutional provision. They could not recover for negligence of the persons who are exposed to the dangers of railroading; but such persons who are so exposed can recover for their negligence, under our Constitution.

In the case at bar Hicks was engaged in no dangerous business. His injuries did result from a running train; the said train having been derailed and turned over on him. If there was any negligence causing the injury, it was the negligence of the engineer, and this engineer was himself in a dangerous employment; but, if the person injured was not himself engaged in work "inherently dangerous," he cannot recover, under § 193, simply because the person whose negligence caused his injury was engaged about a dangerous business. The statute was made for the protection of those whose duties subject them to the dangers of railroading. If the engineer had been injured on account of the negligence of the trackman, this section would have applied. The engineer is engaged in a dangerous employment, and the trackman in a safe employment. The trackman is not exposed to the dangers of railroading, but his negligence may support an action in behalf of a fellow servant who is engaged in any dangerous railroad business. The person or servant whose negligence causes the injury to his

fellow servant may be at a safe distance from danger.  His negligence, however, avails his fellow servant, who is exposed to dangers and who is injured thereby.  The person guilty of the negligence may be in a dangerous employment himself. The person who is injured must have been engaged in work which exposed him to the hazards of railroading.

(4) The plaintiffs asked the trial court to consolidate the two causes.  The court did this, over the objection of defendant. The two cases were tried together.  The plaintiffs were all entitled to recover after this consolidation, under the instructions of the court, if there was any evidence to support any allegation in either of the declarations.  We ask the court to bear in mind that no evidence was offered by the plaintiffs which tended to establish any allegation in either declaration, except that one in the declaration filed by the administratrix to the effect that the engineer was running his train at a dangerous rate of speed.  Under this consolidation, and under the instructions of the court, the jury was authorized to award damages to the widow and children for the death of the husband and father, although no testimony had been offered in support of any charge except the one above mentioned.  In other words, the widow and children were authorized to recover under § 193 of the Constitution.  In fact, the declaration filed by the administratrix asks for " such damages as shall be fair and just with reference to the injuries resulting from such death to plaintiff, the widow and children of the deceased, and such damages as the jury may assess, taking into consideration all damages of every kind to the decedent and damages of every kind to the widow and children."  It appears that the plaintiffs asked for, and that they recovered, all damages of every kind that they found had resulted to the deceased and to the widow and children.  The question as to whether the widow and children could legally recover damages in an action based upon said § 193 is squarely presented to the court.  We will now discuss briefly

the proposition that nobody but the administratrix could recover such damages.

Section 193 was intended primarily for the benefit of the injured employe. Rights of action which were unknown before were created for the benefit of certain employes of railroads. But it was further provided that, if an employe entitled to the benefits of the said section should die before he should recover his damages, his right to sue would vest in his legal or personal representative; that is, in this case, in his administratrix. The administratrix takes his place and sues for the same damages which he (Hicks) would have sued for. It was intended by this last provision to give his estate the full benefit of the new rights of action created by that section. Section 193 did not vest any new rights of action in the members of the family of a deceased employe. It only gave to the employe himself the right to recover damages which he himself had suffered, and, in the event of his death, the right which he had was continued in his legal or personal representative. Besides, at the time this injury was sustained and at the time this suit was filed, there was no statute on our books which attempted to authorize suits in cases of this kind by any other than the legal or personal representative. Chapter 87, p. 97, of the Laws of 1896, and ch. 66, p. 84, of the Laws of 1898, had attempted to create new remedies for the enforcement of this section; but they had been declared unconstitutional. Section 3559, Ann. Code 1892, follows § 193 of the Constitution. Section 4056, Code 1906, had not yet been enacted. This suit was therefore brought under § 3559, Ann. Code 1892, which did not undertake to vest in the widow and children or other surviving members of the family of a deceased employe the right to sue for damages to themselves on account of his death.

Section 4 of the new Code of 1906 preserves rights given by former laws which have been in any manner changed by the new Code, and further provides that " the proceedings in every such case shall be conformed, as far as practicable, to the pro-

visions of this Code." We do not think, however, that it will
be contended that the bringing of the suit by the surviving
members of one's family, instead of by his legal or personal
representative, is a mere matter of procedure which should be
made to conform to the new Code. The distinction is impor-
tant. An administrator does not sue for the same damages
that surviving members of a family ask for. The administra-
tor stands in the place of the deceased, and is entitled to recover
the same damages which the deceased, if he had survived his
injuries, might have recovered. The widow and children re-
cover, not what the deceased might have recovered if he had
lived to bring the suit himself, but the damages resulting to
them, the plaintiffs, on account of the death of the person
injured. Surviving members of one's family sue for damages
to themselves. They may be authorized by statute in other
cases to sue also for damages to the deceased; but in every case
the principal item of their claim is the damage to themselves
on account of their loss of the father or husband as their sup-
porter. As our statutes stood at the time this suit was filed,
the injured employe himself could sue if he lived, and if he
died his legal or personal representatives could sue, and the
measure of damages in the two cases would be the same. There
was no authority to sue for damages to the surviving members
of his family. There was no authority in any person to sue
for anything except the damage done to the injured person
himself.

It is true that we have had § 663, Ann. Code 1892, ch. 86,
p. 96, Laws 1896, and ch. 65, p. 82, Laws 1898, all this time.
It is true that ch. 65, p. 83, Laws 1898, in § 2 thereof provides
that "this act shall apply to all personal injuries of servants
or employes received in the business of the master or employer
where such injuries result in death." But this section has been
held by our court in *Bussey's case*, 79 Miss., 597; 31 South.,
212, to serve only those employes who could sue at common
law, who are independent of § 193. The Legislature at that

time was not dealing with remedies and rights created by § 193. The context of the act shows that they were dealing with rights in general, those dealt with in the Code of 1857, in § 1510, Code 1880, and in § 663, Ann. Code. 1892.

It will not be easy for the court to uphold any legislative enactment which undertakes to extend the rights created by § 193 to the surviving members of the family of the employes for whose benefit that section was ordained. It may be that, if the constitutional convention had never spoken on the subject, the Legislature could have itself created the same rights as are created by that section, and that either the constitutional convention or the Legislature could have abrogated the rigid common-law fellow servant rules; but the Legislature had continually refused to pass any law which would relieve the " bald absurdity " illustrated by the *McMasters case*. The Legislature did not speak. The constitutional convention did.. Since the Legislature would not act, and the constitutional convention did come to the relief of employes of railroads, and did take up the subject of changing the common-law fellow servant rules, we think it will be held that the Constitution has spoken finally on the subject, and that the Legislature can now do nothing more than to extend the remedies in the manner pointed out by the said section of the Constitution. The last clause of said section is as follows: " The Legislature may extend the remedies herein provided for to any other class of employes." The Legislature is authorized to extend these remedies to other classes of employes, not to the surviving members of the families of deceased employed. The Legislature is not given permission to extend the remedies to other persons in general, nor to extend or modify the remedies given to these particular employes whose rights and remedies are defined by this section; but permission is given to extend the remedies which are fixed by this section for one class of employes to other classes of employes. The Constitution makers thought that proper and legal classification of businesses might be made, and that Legis-

latures might discover and fix a basis for classification, and to
such other classes of employes extend these rights fixed by this
section in favor of certain named railroad employes.   As far
as this section goes it is complete.   Nothing was left for the
Legislature to do.   Rights were created in favor of certain
railroad employes, and their remedies were also provided.
These rights and these remedies were intended to be continued
as the Constitution fixes them.   The injured employe could
himself sue in the enumerated cases.   If he died, the person
representing his estate could sue for and recover the same dam-
ages which he, if he had lived, could have recovered.   In other
words, under the said section, no damages are recoverable ex-
cept those suffered by the person injured.   Under this section
there is no such thing as damages for a death.   A widow cannot
sue for the loss of her husband.   A child cannot sue for dam-
ages to himself occasioned by the death of his father.   The
husband and father injured can sue if he lives; and if he dies
his legal or personal representative must step into his shoes and
bring the suit which he was authorized to bring.   This view of
§ 193 is necessarily sound, if it is a correct rule of statutory
construction that Legislatures cannot deal with subjects which
are dealt with in the Constitution, except in so far as the Con-
stitution itself authorizes it.

It is true that in the *Bussey case,* 79 Miss., 507, 510; 31
South., 212, 214, our court said: "It is true, it [§ 193] pro-
vided that 'legal or personal representatives' might assert the
rights thereby provided, and that in the *Hunter case,* 70 Miss.,
471; 12 South., 482, which nullified the words 'or legal rep-
resentatives' in § 193, it was held the personal representative
must sue till legislation extended the remedy.   The *Hunter
case* did not attempt to hold the Legislature was not authorized
to extend the remedy provided by § 193.   That section ex-
pressly says:   'The legal or personal representatives shall have
the same rights and remedies as are allowed by law to such
representatives of other persons.'   It was perfectly competent

for the Legislature to provide additional remedies, and it did do so in the acts we are considering, for the express purpose of abrogating the rule announced in the *Hunter case;* and it also by the same legislation abrogated the rule announced in the *Pendergrass case,* 69 Miss., 425; 13 South., 954." But here the court was not considering this particular question. This argument was not made to the court in that case. It seems to have been conceded that the Legislature could extend the remedies and rights created by § 193 to all persons, whether employes or not. The only question at issue in that case was whether the Legislature had so extended the remedies by the acts of 1896 and 1898. Our court has said that the Constitution in § 193 creates rights and causes of action never existing before. *Bussey* v. *Railroad Co., supra; White* v. *Railroad Co.,* 72 Miss., 12; 16 South., 248. These rights and causes of action created by § 193 were in favor of the employes enumerated therein themselves. To now hold that the Legislature may authorize surviving members of one's family to sue is creating new rights and causes of action in favor of these persons. The said § 193 does create such rights and causes of action. This would not be an extension and development of remedies. It would plainly be a creation of new rights and new causes of action. It is a right entirely different from that created by § 193. An injured employe sues for his own suffering and loss of time, and his representative takes it up if he dies and sues for the same thing. Section 193 contemplates this and authorizes it. But the surviving members of his family sue for themselves, and recover damages to themselves occasioned, not by the suffering and loss of time of the deceased, but on account of his death and their loss of his support. This is a new and different cause of action, and, if it can now be created by the Legislature, then the fact that the Constitution deals with the subject does not in any way limit the powers of the Legislature. This view of § 193 seems to have been formerly entertained by the court. At least a view of the section was

entertained which would seem to logically conduct one to this conclusion. It was said in *McVey* v. *Railroad Co.*, 73 Miss., 487; 19 South., 209, that there could be no recovery for the death of an employe for whose benefit § 193 was ordained if the death was instantaneous. This recognized the construction of the said section above contended for; that is, that it was made for the benefit of the employes themselves, and, if the employe did not live long enough for his right to accrue, then no action survived to his legal or personal representative.

It is reasoned by some that legislation respecting the remedies for the enjoyment of rights of action antedating § 193 inures to the benefit of persons for whom § 193 was made; that since the said section provides that, " where death ensues from any injury to employes, the legal or personal representative of the person injured shall have the same rights and remedies as are allowed by law to such representatives of other persons," any statute which enlarges the rights and remedies of persons not employes at once becomes a part of said § 193 and may be used by the legal or personal representatives of employes suing under that section. It is said that no separate legislative action is needed to develop the rights and remedies created by § 193; that the Legislature cannot make laws for the benefit of the legal and personal representatives of other persons without at the same time legislating for the benefit of employes for whom § 193 was made; that by the express provisions of said section the legal and personal representatives of these employes have all the rights and remedies enjoyed by the representatives of other persons. This view of § 193, if adopted, would characterize ch. 87, p. 97, Laws of 1896, and ch. 66, p. 84, Laws of 1898, as meaningless and wholly unnecessary enactments. It would demolish the theory of two statutory schemes made necessary by decisions of this court in the *Phillips case*, 70 Miss., 14; 11 South., 602; the *Hunter case*, 79 Miss., 597; 31 South., 212; the *White case*, 72 Miss., 12; 16 South., 248, and the *Woolley case*, 77 Miss., 927; 28 South., 26, and fully defined in the

*Bussey case.* It would at least demolish one of these statutory schemes, and it would render meaningless much writing which has heretofore been thought necessary by the Legislature and by our supreme court.

We think, however, that this court will stand by the theory carefully defined in the *Bussey case;* that it will continue to treat § 193 of the Constitution as being the originator of certain causes of action, the enjoyment of which must be developed by legislation framed for that specific purpose; that it did not create these causes of action with the intention that they should be thenceforth treated as belonging to the same class with all other causes of action for personal injuries. This court has, in the *White* and *Bussey cases,* expressly decided that the said section creates " causes " of action, and that these causes of action were wholly unknown before. It is not held that the said section simply abolishes defenses to actions which could be maintained theretofore. The causes themselves were ·created. These causes of action were created in the injured employes themselves. ‚Causes of action were not created for the death of employes. These are entirely distinct. The legal and personal representatives, under said § 193, have the right to sue as legal and personal representatives of other persons in general could sue. At that time it was not contemplated that an administrator could ever sue for injuries occasioned by a death. When the Constitution provided that the personal representative of a deceased employe should have the same rights as the personal representative of persons not employes, it was only meant to say that the cause of action created in the employe by that section should not die with him; but it (this same right of action) should survive to his personal representative. Under the law as it then stood personal actions of other persons did not survive. It was only meant to say that personal actions of this kind should exist and also survive. Section 193 does not give any right of action to the members of one's family. The Legislature could not pass a valid law taking away from

the personal representative of a deceased employe, authorized
to sue under § 193, the right to bring, after the death of such
employe, the suit which he could have brought if he had sur-
vived his injuries.   This right is the only one created by § 193
in personal and legal representatives.   It is really something
new in the law for an administrator to prosecute any action
which the deceased could not have prosecuted.   This right has
not yet been extended to the representatives of deceased em-
ployes belonging to the classes favored by § 193.

But in the case at bar the plaintiffs, the widow and children,
were permitted to recover under § 193.   Evidence was admitted
which tended only to show that the engineer was running his
train at a dangerous rate of speed.   The verdict of the jury is:
" We, the jury, find for the plaintiffs in the sum of $7,500."
The verdict was awarded to the widow and children, as much
as to the administratrix.   No instructions were given which
required the jury to make any distinction.   If they believed
any allegation in either one of the declarations was proved by a
preponderance of the evidence, it was made their duty to render
a verdict for all the plaintiffs.   Learned counsel for the plain-
tiffs did recognize the delicate situation in which he had placed
the court and the jury, and asked no instructions directly charg-
ing the jury that they might award damages to the widow and
children for the loss of the husband and father, and asked only
instruction No. 3, which reads:  " If the jury find for the
plaintiffs, then it is a proper element of damages to accord
compensation for whatever bodily and mental pain, if any,
they find from the evidence Ray Hicks suffered consequent
upon the injury.   Such damages are not punitive, but com-
pensatory."   On the other hand, the court refused an instruc-
tion, asked by the defendant, whose purpose was to hold the
jury to an award of damages only in favor of the administratrix.
This instruction, asked by the defendant and refused by the
court, is as follows:  " The court instructs the jury, for the
defendant, that if you should find for the plaintiff you must

award no damages to the widow for the loss of her husband and no damages to the children for the loss of their father. If you should award any damages at all, you should give no greater sum in this case than you would give if there were no widow and children."

(5) Whatever view may be taken of this case, it was fatal error for the court to consolidate these two causes. Counsel for plaintiffs did not know what could be proved. If the trial of one of the cases had been entered upon, their proof might have failed altogether. They might have selected the wrong case to go to trial on. In order that they might not be mistaken at all, they asked the court to consolidate the two causes, and thereby enable them to get the benefit of whatever proof there might be, and to get the benefit of said proof for both cases, although in one of the two cases the said testimony might not have been competent or sufficient, if offered in the trial of the single case. It was technically wrong to consolidate the two causes. The motion says the cause of action in the two suits is the same. But this is not true. The suit by the administratrix is dependent upon § 193 of the Constitution. That by the widow and children is dependent upon § 663 of the Code, as amended by the acts of 1896 and 1898. They are entirely different. If they had not been different, counsel would have filed but one suit. They would not have dared to file one suit, joining the administratrix and the widow and children, and basing their right of action upon both the said section of the Constitution and § 663 of the Code of 1892 and its amendments.

The first suit is based upon the alleged negligence of a fellow servant in another department of labor or about a different piece of work. The second suit is based upon the alleged defaults of the master itself. The issues are entirely different. We have already seen that the damages recoverable are entirely different. Again, the parties to the suits are not the same. It so happens that the widow is also administratrix. But the administratrix is an entirely different party. If John Jones

had been administrator, the proposition would have been precisely the same. The administratrix brought one suit to recover upon the cause of action which no one could utilize but the personal representative. The widow and children, entirely different parties, brought another suit to recover entirely different damages upon other grounds of action. In *Spratley* v. *Kitchens*, 55 Miss., 578, this court said that it was error to consolidate two actions in replevin, where the parties were the same, but the suits were brought to recover different cows, and the sureties on the replevin bonds were different. The court said it was erroneous and fatal because of the different sureties on the bonds, saying further: " The effect of the judgment rendered was to make each surety on each bond liable for all the cattle in controversy in both suits "— and further: " Suits can be consolidated at law only when all the parties are the same on both sides and a single judgment can settle the rights of all." In 4 Ency. Pl. & Pr., 677, it is said: " That there may be an actual consolidation the following conditions are essential: First, the action must be depending, all perfect and complete, at the same time, or at least before the writ is issued; secondly, the actions must be between the same plaintiff and the same defendant; thirdly, the actions must be such as may be joined."

The court will observe that in the course of this trial, when evidence was offered by the plaintiffs, it was admitted if competent under any theory of the case, or if it would have been admissible upon the trial of either one of the cases singly. We submit that this was fatal error. It is necessarily fatal error unless the widow and children can sue for damages under § 193 of the Constitution. It is fatal error unless the administratrix is a wholly unnecessary party. It is fatal error unless the widow and children could have sued, joining the cause of action arising under § 193 of the Constitution with one arising under said § 663 of the Code and its amendments. It is fatal error unless this court should overrule the former decisions already

referred to herein, which recognize two distinct legislative schemes — one providing for remedies by which the rights given by § 193 can be enjoyed, and the other dealing with rights and remedies which are traced back to Lord CAMPBELL's act.

(6) As applied to the facts of this case, and especially as used in the trial of the consolidated causes, the giving of instruction No. 4 for the plaintiff was fatal error. That instruction is as follows: " The jury is instructed, for plaintiff, that under the laws of this state proof of injury inflicted by the running of a train makes a *prima facie* case of negligence on the part of the railroad company, and, it having been shown in this case that Hicks was injured by the running of a train, the burden is on the defendant to meet this *prima facie* case and show the facts that exculpate it, and if the evidence does not show absence of negligence on the part of the defendant, or unless it shows the existence of contributory negligence on the part of Hicks, the jury must find for plaintiffs."

In the first place this instruction should not have been given, because all the facts about this occurrence were in evidence. There were eyewitnesses, and they were all introduced, to the number of ———. The train was loaded with passengers, and they got off at once and examined the surroundings, and inspected the track and the equipment of the train. They made their inspection for the purpose of determining what could have caused the derailment. They found nothing that would account for the accident. All the facts available about this casualty were brought before the court and jury. The case should have been left to the jury, to be decided upon facts and not upon the presumption. But it was insisted by counsel below that the facts do not explain the accident, and that the burden is upon the defendant, even after it has shown all the facts in its possession, and has given the jury all the available information, yet to go further and furnish a satisfactory explanation of the occurrence. This certainly is not what the statute means. A presumption is permitted to be used in those cases where the

facts are not known and where they are in the possession of the defendant. This court has said over and over that it does not serve the purpose of the plaintiff in cases where the facts are all before the court. Such presumption does not require the defendant at its peril to explain every accident that happens, but only to show the facts about it as far as they can be shown.

In the second place, we say that, if the presumption can ever be used by an injured employe, this is not the kind of case in which it will help him. Since § 1808, Ann. Code 1892 was amended by § 1985 of the Code of 1906, so as to make the presumption arising from proof of injury inflicted by the running of the locomotive or train apply in favor of employes, to what extent is the case of this plaintiff made easier to prove? The section now reads: " In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotives or cars of such company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. This section shall also apply to passengers and employes of railroad companies." The last clause is the amendment. Our supreme court has said that the section as it appeared in the Code of 1892 did not help the case of employes (*Short* v. *Railroad Co.,* 69 Miss., 848; 13 South., 826), nor the case of a passenger (*Railroad Co.* v. *Humphrey,* 83 Miss., 721; 36 South., 154), nor any case based upon a cause of action arising out of a contract (*Railroad Co.* v. *Trotter,* 60 Miss., 442). It was the purpose of the Legislature to change the rule as to passengers and employes.

The reason for the rule of evidence created by this statute is that injuries to persons and property caused by the running of locomotives and trains very frequently occur at times when there is no one present but the persons in charge of the running train. The railroad employes very frequently know how the accident happened, when no one else could know anything about

it.  They are on the train, and they go with it, and are necessarily present at the happening of every accident.  In a majority of cases the railroad company is in possession of all the information concerning the accident which caused the injury, and in a great many cases it is no hardship upon the company to require it to furnish information which it possesses.  Its employes are under its orders, are usually available as witnesses, and their attendance at court can be conveniently had.  These same employes frequently reside in other states, are out of the reach of the process of our courts, and could not, therefore, be brought into court by the person or the owner of the property injured.  In principle, the rule may be based upon the same fundamental reasons which prompt courts of chancery to compel defendants to come into court, and produce information which they alone could furnish.  Courts of chancery can compel such production of information which rests with an adverse party.  This statute enables law courts, not directly to compel a railroad company to produce information which it alone can obtain and produce; but the same result is reached by giving to the plaintiff the benefit of certain presumptions against the defendant, unless the information which it possesses is furnished.

This statute only creates the presumption of negligence on the part of the " servants of the company with reference to such injury."  The presumption must be indulged, not against the company itself, but only as to the acts " of the servants of the company in reference to such injury."  Permanent defects in tracks or in machinery might be describable by others than the employes, or might be known to others than the employes.  At least, information about permanent defects could not be hidden, and would not be so hard to find out as would facts about a momentary situation surrounding the accident itself.  It was the purpose of this statute to force the railroad company to bring into court the witnesses who were in control of the running locomotive or train at the time the injury was done — to

compel the railroad company to produce for the benefit of the plaintiff the persons who saw the accident, its employes, who by, their management of the locomotive or train caused the injury. Under this statute it will be presumed in every case that the persons in charge of the locomotive or train did not exercise reasonable " skill and care." This momentary situation could be described by none others than the persons who were there on the ground and who saw it, if it was seen by anybody. The presumption is not indulged against the company itself as a principal, but against the company, on account of the want of skill and care on the part of the servants engaged in the immediate operation of the train.

This question whether the presumption is indulged against the acts of servants in the immediate control of the running train or against the principal itself could never have arisen under the statute as it appears in the Code of 1892. The cases arising under that statute were those which could be maintained upon proof of the want of reasonable skill and care on the part of persons in charge of the train. It would never have been presumed under that statute that the company had a defective track or defective appliances or machinery. The question could never have arisen whether the accident was due to breach of duty on the part of the company itself or on the part of employes in the performance of delegable duties. The presumption was only that the persons in charge of the locomotive or train did not exercise reasonable skill and care with reference to the injury. The presumption was, in the absence of proof of the circumstances, that reasonable skill and case were not exercised by the persons in charge of the locomotive or train. In other words, the presumption was that the very persons who were in charge of the moving locomotive or train at the time it inflicted the jury did not, in view of the circumstances of the case in hand, exercise, with reference to the injury, reasonable skill and care. There could be no place or occasion under this section of the Code of 1892 for the presumption that the prin-

cipal itself had been guilty of negligence in the performance of nondelegable duties or primary duties. If it had been the purpose of the statute to indulge such presumptions against the principal itself in the performance of its primary duties, there is no reason why it should not have been indulged in favor of passengers and employes and other persons under contract with the company.

But under this section as amended, when an employe sues, it will have to be determined whether the negligence which caused the injury was that of an ordinary fellow servant, or that of the company itself, or that of an employe on account of whose negligence the plaintiff can recover under § 193 of the Constitution. Certainly, if an employe is injured by a moving train, and it is not known how the injury took place, it will not be presumed that the company is responsible for his injury, when it is not known whether the default which caused the injury was that of the master itself, or of a superior officer of the employe injured, or of a fellow servant in another department of labor or on another train of cars, or of a fellow servant for whose negligence the injured employe could not recover at all. Will it be presumed, in the absence of evidence as to the facts of the injury, that the negligence causing the injury was that of the master, and not that of a fellow servant for whose negligence the injured employe could not under any circumstances recover? Under the old statute the presumption could be indulged in every case to which it applied, because it made no difference whether the negligence causing the injury was that of one class of employes or of another. But, if this amendment should be enforced literally, then an injured employe could recover for the negligence of his fellow servants, if the facts about the injury were not known to the defendant, although they might be fully known to the plaintiff himself. One brakeman might be hurt by the negligence of another brakeman. The injured brakeman could bring his suit, and, as long as he could prevent the company from finding out the

facts about it, he could recover on the presumption, although he might have all the facts in his possession. If this amendment should be literally enforced, it would not only abolish the fellow servant rule, but would enable employes in many instances to recover for injuries occasioned by their own negligence. It would make presumptions more valuable than the facts. It would not only make them more valuable as evidence, but would create new causes of action. By the aid of these presumptions an injured employe could recover for the negligence of his fellow servants when, if he should show the facts, the company would be exonerated.

When the statute says it will be presumed that there was negligence on the part of the servants of the company with reference to such injury, what servants does it mean? Does it mean fellow servants of the same rank, engaged in the same department of labor, or on the same train of cars? If it does mean this, what good will the presumption do the plaintiff? Will it make out the plaintiff's case to give him the benefit of the presumption that he was injured through the negligence of a fellow servant of this kind? Can it be said that this presumption will help him more than positive proof of the same facts would help him? May an injured employe recover damages when the only evidence in proof of his injury is a presumption that he was hurt by the negligence of an ordinary immediate fellow servant, when he could not recover if he had offered the testimony of eyewitnesses to the fact that his injury was so inflicted? Will it be held by the courts that an injured employe can recover for injuries caused by the negligence of an immediate fellow servant, provided the claimant rely upon the presumption created by the statute, and not upon positive proof of the injury? If this should be held, would not this amendment appearing in the Code of 1906 operate as a repeal of the fellow servant rule in every case where the statute could be applied and the presumption indulged? But this statute must be construed so that it will create a new cause of action

and operate as a repeal of the old-time fellow servant rule, or it will be impracticable to employ it at all. A case could not be said to be proved by a presumption that two or more states of fact are true, when one state of facts would authorize recovery and another state would not authorize recovery. An employe, suing for injuries inflicted in an unknown way by the running of a locomotive, would not be benefited by a presumption that his injuries were inflicted by the master itself, or by a fellow servant in another department of labor by an immediate fellow servant working by his side and having no authority to direct or control his services. This presumption would help the defendant as well as it would the plaintiff. It would not make out the plaintiff's case, any more than it would be defendant's defense. It would prove the affirmative and negative at the same time. It would create presumptions directly antagonistic to each other.

In the construction of this amendment, then, the question becomes: To what class of cases will it be applied? Shall it be applied to all, even to those cases in which the presumption of want of care and skill on the part of the servants of the railroad company would support and defeat the plaintiff's claim? Or will it be applied to those cases only where it could be contended that if there was negligence at all, causing the injury, it was negligence of a fellow servant described in § 193 of the Constitution? If it is undertaken to apply it to the latter cases only, the presumption cannot be indulged, unless inquiry is first satisfied as to who caused the injury. After this inquiry is satisfied, however, it cannot be conceived of what value the presumption would be. Such entanglement would always be found in cases where the injured employe was on the train or locomotive that inflicted the injury. It must be applied to those cases only, or its application will necessarily create new causes of action, and will enable the injured employe to recover for injuries occasioned by the negligence of fellow servants, whenever their claim can be supported by this presumption,

although, if positive proof were made, there could be no recovery. The statute can be made to apply only in a case where the fact would not have to be proved. The statute has evidently authorizes to be presumed. It would not aid a plaintiff to give him the benefit of a presumption, when without the presumption the fact would not have to be proved. The staute has evidently been neglected and misconstrued. It has been treated just as if it read: "Proof of injury inflicted by the running of locomotives or cars of such company shall be *prima facie* evidence of liability on the part of the company." But it does not read that way. "Proof of injury inflicted by the running of locomotives or cars of such company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury."

It is difficult to see how this amendment ingrafted onto this section can be reconciled and made to operate with the other parts of the section. This difficulty would be apparent if this court had never spoken on the subject. But the discussion of the section by our court makes the difficulties more obviously embarrassing. In *Railroad* v. *Trotter,* 60 Miss., 442, this court held that § 1059 of the Revised Code of 1880 " is not applicable in cases of suits by persons standing in a relation of contract with carriers." It was said, too, that shippers of goods do not have to show any negligence on the part of carriers to entitle them to recover for damages done to goods, and that passengers do not have to prove the want of reasonable skill and care on the part of the servants of the company. Shippers can recover if their goods are lost or damaged by the carrier, in general, whether the carriers have been guilty of negligence or not, and, as to passengers, carriers must exercise the utmost care and prudence. The court said: " The words of the statute are proper only when construed as referring to suits by persons, never shippers nor passengers, when property or persons have been injured." It was said, too, that if the Legislature had had in mind persons contracting with carriers it would have

91 Miss.—20

given the same protection to patrons of steamboats,' as well as those of railroads, and that in any event the operation of the statute would not have been limited to cases in which the damage was done by the running of trains, but would have extended to all injuries, however caused. The reasoning of the court in the *Trotter case* condemns this amendment as to passengers and employes. The statute would authorize the indulgence of the presumption which is not needed at all by these classes of plaintiffs in making out cases against railroad companies. In *Short* v. *Railroad Company,* 69 Miss., 848; 13 South., 826, the court held that the statute (§ 1059, Rev. Code 1880) does not embrace employes.

In *Railroad Co.* v. *Humphrey,* 83 Miss., 721–739; 36 South., 154, the court takes up for more thorough discussion the question as to whether this § 1808, Ann. Code 1892, can be used in the trial of suits by passengers. The opinion of the court in the *Trotter case* is approved. The reasoning employed in that case was adopted for the purpose of the decision of the *Humphrey case.* The court said in the latter case: "The words of the statute are proper only when construed as referring to suits by persons, neither shippers nor passengers, when property or persons have been injured." And again the court says in § 1808 that "proof of injury shall be *prima facie* evidence of the want of reasonable care and skill, but the doctrine of reasonable skill and care in its express legal meaning has no application to that degree of care which is required under the law of carriers dealing with passengers. 'Utmost care and caution' is the accepted term which defines the duty which the carrier owes to its passengers, and it would be an inaccurate employment of a legal phrase to hold that it was intended to make a rule of evidence, which is applicable to carriers occupying one attitude towards one class of persons, apply to an entirely different class of persons to whom an entirely different duty was owing." In other words, our court has said that the presumption of failure to exercise reasonable skill and care on the part of the servants

of the company can be of value in those cases only where the
measure of care and caution is expressed by these words. Rail-
road companies are required to exercise reasonable skill and
care to prevent injuries to persons or animals rightfully on
their tracks, and to prevent setting fire to property along their
right of way, and the statute says that, when proof is made
that a person or property has been injured by the running of
trains or locomotives, the fact that such injury has happened
may warrant the jury in saying that the company is liable,
because such proof warrants the presumption that the servants
of the company did not exercise reasonable care and skill with
reference to the injury.

While the court in the *Trotter* and *Humphrey cases* was dis-
cussing this section as it appears in the Codes of 1880 and
1892, and before the amendment was passed which appears in
the Code of 1906, yet the reasoning in these cases may be em-
ployed in the construction of this section as now amended.
How can the rule be applied to these several different kinds of
cases? Of what value will the presumption be in trying a suit
by a passenger or a suit by an employe? How will an em-
ploye's case be made out, even though he be permitted to pre-
sume that servants of the company failed to exercise reasonable
skill and care with reference to the employe? In the two cases
above mentioned the court did not point out the entanglement
that would arise if the presumption were attempted to be used
in favor of employes. The embarrassment which would pre-
vent the application of it in cases by shippers and passengers
was pointed out. The confusion is still greater, as above sug-
gested, when it was attempted to apply the statute in favor of
employes.

If the statute should be used as it is now written, it would
apply to the following different kinds of cases: (1) Claims
by persons rightfully on or near the track, who have been in-
jured by the running of locomotives or cars. To such persons
the company owes the duty to exercise reasonable skill and

care to prevent injuries. (2) Claims for injuries to property rightfully on or near railroad tracks. The company, through its servants, owes the duty to exercise reasonable skill and care to prevent these injuries. (3) Claims by passengers who have been injured while on or about a moving train. To such persons the railroad company, through its servants, owes the duty to exercise the utmost skill and care to prevent injuries. (4) Claims by employes who have been injured by their immediate fellow servants, who are engaged in the same department of labor on or the same train of cars, and all of whom are of the same rank and do not control each other's services. To such persons, generally speaking, the company owes no duty through such servants working side by side with the injured employe. (5) Claims by employes who have been injured by the negligence of the company itself; that is, by the failure on the part of the company to perform some primary duty to such person. The company does not owe the duty through all of its servants to exercise reasonable skill and care to prevent injuries to all employes. The presumption would prove negligence on the part of the servants of the company; but it would be impossible to determine from the presumption what particular servants had been negligent, and whether the negligence had been committed by the servants for whose acts with respect to the injured person the company is responsible. (6) Claims by employes who•have been injured by the negligence of fellow servants of the classes enumerated in § 193 of the Constitution. It may be the duty of servants belonging to the classes enumerated in § 193 to exercise reasonable skill and care to prevent injuries to the favored employes, but the presumption will not assist a court or jury in locating the negligence or in identifying the guilty servant.

The section cannot be made to fit all these cases. It can be made to fit no case, unless the burden is on the plaintiff in such case to prove want of reasonable skill and care on the part of servants of the company with respect to the injured.

Not only must the plaintiff be bound to prove want of reasonable skill and care, but the facts of the case must be such that the failure to exercise reasonable skill and care by any servant with reference to the injury in question will render the company liable. Want of reasonable care and skill must be the only thing to be proved, since that is the only thing which may be presumed under the statute. The statute does not authorize the plaintiff to indulge in a presumption that any particular employe has been guilty of the negligence causing the injury, but only that there was want of reasonable skill and care on the part of the servants of the company with reference to the particular injury. In the case at bar if presumptions are to be indulged, the deceased himself might be condemned. The accident was not explained. No one knows how it occurred. The deceased was working on the track right along about the place where the derailment happened. It might have been caused by defects in the track, and the deceased might have been guilty of negligence himself. It may be that his own negligence caused the injury. He was in a position to bring about such an occurrence, and he was one of the servants of the company who had something to do, it might be said, with reference to such injury.

As far as passengers are interested the amendment has no meaning. The rule, "*res ipsa loquitur*," serves passengers as well as any statutory presumption could. Carriers owe to passengers the utmost degree of care and diligence. It does not help a passenger's suit for injuries to give it the benefit of a presumption that the servants of the carrier were guilty of negligence with reference to the injury. And as to employes infinite entanglement will arise which make it impossible to tell what the Legislature meant. This court had said that such a presumption cannot be used by employes; that it is unreasonable to try to use it in such cases; that such a rule does not fit such cases. But the Legislature had said, "We will make it fit," and, however unreasonable, "it shall

be applied." We submit to the court that the said amendment is inoperative and void, because it is so uncertain and ambiguous that its meaning cannot be ascertained and it cannot be determined to what cases and under what circumstances it is intended to be used. For the general rules by which statutes must be measured, and by which their invalidity is determined, see *State* v. *West Side St. Ry. Co.,* 146 Mo., 155; 47 S. W., 959; Lewis' Sutherland on Statutory Construction (1904) § 86.

(7) The motion to exclude the plaintiffs' evidence and for a peremptory instruction should have been sustained. The plaintiffs put a great number of witnesses on the stand to show that the train was running at a very rapid rate of speed. This speed was estimated by them at from twenty to forty miles an hour. These witnesses said, also, that it was a new road at that time. But those who were asked about it said it was a good track — not rock-ballasted, but had sand on it. They got out and examined the track, to find out whether there were any defects in it which could have caused the injury. They found nothing. On the other hand, they found that the track was in good condition. Nobody said that at this particular point there was anything in the track itself which made it dangerous or negligent to run a train at from twenty to forty miles an hour. If we should average the testimony of these witnesses, the rate of speed would be found to be about thirty miles per hour. Nobody said that this track was not good for that speed. The plaintiffs did not prove their whole case. They should have not only shown that the train was running at a good rate of speed, but also that this particular piece of track was not safe for such speed. If they had not shown that the track was good, the burden would have been on them to show that it was bad. But they went further, and showed by their own testimony that the track was in good condition. Not one of them said that the train was running too fast for this particular track, and the only descrip-

tion of the track was given by witnesses who said that it was good. The jurors, of course, being omniscient, could infer that the track was not in good condition, and that it was not safe to run a train at thirty miles per hour at this particular place; but such inference of theirs has no facts to support it. The fact that it was a new road might be sufficient for a jury; but that does not mean that it is sufficient in reason, and that conclusions drawn can, with any degree of safety, be depended upon. This court knows as much about that track as the jury did. We submit it is impossible to tell from this record, up to the time the plaintiffs rested their case, whether that track was good for twenty, thirty, or forty miles per hour.

In conclusion, we say that the judgment of the lower court should be reversed: (1) Because it plainly appears that the injuries received by Hicks, from which he died, were caused by an accident which could not have been foreseen. (2) Because no evidence was offered in support of any allegation upon which the claims are based, except the one to the effect that the engineer was running at a dangerous rate of speed, and § 3559 of the Annotated Code of 1892, under which the suit by the administratrix was brought, is violative of the fourteenth amendment to the federal Constitution. (3) Because it plainly appears that the deceased did not belong to that class of employes for whose benefit § 3559 of the Annotated Code of 1892 and § 193 of the state Constitution were made. (4) Because the two causes were consolidated. (5) Because the court gave an instruction for the plaintiffs, and denied an instruction for the defendant, upon the theory that the plaintiffs were entitled to the benefit of the presumption created by § 1808, Ann. Code 1892 (§ 1985, Code 1906). (6) Because under any view of the case the motion made by the defendant at the conclusion of the plaintiff's testimony to exclude the said testimony and for a peremptory instruction should have been sustained.

We do not understand that the decision in the *Hunter case*

has been condemned by this court. It was said in the *Bussey case* that this former decision nullified the words "or legal representatives," used in § 193. But this statement seems more like an acquiescence in that decision, an acquiescence in such nullification of the words "or legal representatives." Since the decision of the *Bussey case* the Legislature has extended the remedy, and has attempted to extend the rights, given by § 193. If an error was committed in the decision of the *Hunter case,* the Legislature has cured it. If the *Hunter case* is now reversed, it would perhaps affect few controversies except the one at bar. There may be a few others in this state based upon causes of action arising before the Legislature made the change. These are necessarily very few in number. This court does not overrule its former decisions, unless it is necessary.

But we insist that there should be a reversal in this case, although the decision in the *Hunter case* should be reversed. There was no right in the widow and children to sue for damages to themselves on account of the death of an employe protected by § 193 at the time this cause of action arose, or at the time suit was filed. Counsel say that chapter 66, p. 84, of the Laws of 1898, was in force except in so far as the rights and remedies therein provided for were attempted to be vested in the employes of corporations other than railroad corporations. But in the *Ballard case* this court said: "Our conclusion, after most careful and protracted consideration, is that § 1 of the act of 1898 (Acts 1898, p. 85, c. 66) violates the fourteenth amendment of the Constitution of the United States in that it imposes restrictions upon all corporations, without reference to any difference arising out of the natures of their businesses, which are not imposed upon natural persons, and thus denies to corporations an equal protection of the law. We are therefore constrained to declare the said act unconstitutional. The Legislature, soon to meet, can readily frame an appropriate act not open to these objections."

It will be seen that the court declared the entire act uncon-stitutional.  It did not simply amend the act, as counsel now argues.  It did not sever the good from the bad, leaving the good standing.  The entire act was declared void.  The suggestion was made, too, that the Legislature could pass a new act which would not have these objectionable features.  A new act of the Legislature would have been unnecessary, if counsel are correct in their contention here.  The effect of the decision in the *Bussey case* would have been only to strike out the words in the act which rendered it unconstitu-tional, thus leaving the good parts.  But this court said a new act was necessary.  The new act was not passed until 1906.  This act of 1906 not only undertook to give a remedy to the widow and children by which they might recover the damages which the deceased could have recovered if he had lived, and which could theretofore be sued for after the death of the injured employe by an administrator or executor only, but the said act of 1906 goes farther and vests in the legal repre-sentatives, the heirs of the deceased, the right to sue, also, at the same time to recover whatever damages they themselves may have suffered because of the death of the injured employe.  There is a vast difference between the right to sue which is inherited from the deceased and the right to sue for damages to themselves because of the death.

In the case at bar these plaintiffs recovered all damages — not only such as the deceased himself suffered, but also what they themselves suffered.  It is true counsel avoided the giving of instructions which would authorize the jury to find such damages to themselves, but the effect was the same.  Evidence was admitted over the persistent objections of the defendant of the age and expectancy of the deceased, of his earning capac-ity, and of the number of the children and their ages, and of the widow and her age.  This testimony could only be ad-missible upon the theory that damages could be estimated upon this kind of a basis, and that the widow and children

could recover for the loss to themselves occasioned by the death of the husband and father. If the widow and children have a right to recover in this case for the damage to themselves occasioned by the death of Mr. Hicks, what law gives them this right? They can only stand on § 4056 of the Code of 1906. Certainly a right of action could not be created to vest in these people, based upon an accident which occurred before the law was passed.

Besides, as we suggested in our former brief, § 193 of the Constitution does not authorize the Legislature to extend the rights and remedies therein vested in employes themselves to the heirs of the deceased employe. The right to sue for the same thing that representatives of other persons not employes might sue for and recover may be vested in them; but the Constitution does not authorize the Legislature to extend the rights and remedies therein provided for, except to the employes of other corporations. The Legislature may extend the rights and remedies; but to whom? The power is given the Legislature to extend this right and remedy to the employes of other corporations, and to no others.

(2) Our contention cannot be answered that we were prejudiced by the consolidation, unless the court should hold that the two suits were unnecessary, and that, even at the time this suit was filed, the widow and children could sue for damages to the deceased and damages to themselves occasioned by his death. If the two suits were unnecessary, and the administrator could have sued for all damages claimed in both suits, or if the widow and children could have sued for damages, then we are willing to concede that we were not prejudiced by the consolidation.

(3) Counsel say that specific objection was not made to the consolidation and to the instructions; that it is better practice to make the record show the specific objections. It may be true that this is better practice. But it has not been the practice heretofore. If this court should promulgate such

rule, or declare such a law, we are as willing to conform to it as any members of the profession. We do say, however, that it would be radical and far-reaching to establish a rule of that kind without notice and make it apply to cases that have already been tried. A more damaging, a more disastrous, application of retroactive judicial legislation could hardly be conceived. Every litigant whose case has been tried in the lower court would suffer. His attorneys possibly followed the law as it was written at the time and the rules of practice then in vogue, but would come to this court and find that since his case was tried the law has been changed, and what he did in the trial of his case was not sufficient to get the issues which were before the lower court into this court for review. Not only would it be disastrous to the rights of all litigants whose cases have been tried in the lower court, but it is an unwise rule to establish even for use hereafter. It would only serve to burden the record. The effect of the recent decision of this court, holding that objections to testimony will not be considered here unless specifically brought to the attention of the trial judge in the motion for a new trial, will only serve to require this court to read the larger part of the record twice, instead of once. No lawyer will take any chances and he will therefore omit nothing. In his motion for a new trial he will write out every item of testimony to which objection was made for the purpose of calling the court's attention to it, and this court will not take his word for it, but will go back and read the record, and will be compelled to read the record twice — one time extra because of the establishment of this rule. Motions for a new trial will be ponderous from this time on. If the court should require that specific objections to instructions should be made at the trial, counsel will make every objection that can possibly be thought of, and their motions will only burden the record, and require this court to do a great deal of extra reading.

(4) We most earnestly insist that this deceased was not

one of the employes protected by § 193 of the Constitution; that he was engaged in no employment that was inherently dangerous. Counsel· say that the answer to our argument is very obvious, that Hicks was in fact killed by a. running train, and that this shows that he was in a position of peril. This argument of counsel demonstrates the unsoundness of the theory upon which they have proceeded all the while. They ask this court to classify instances, instead of employments. Under their theory of the case the only inquiries necessary are: First, was the injured person an employe? and, second, was he killed by a running train?· But accidents can certainly happen in the railroad business as well as elsewhere. One engaged in an employment which is not at all dangerous is sometimes injured. The question is not, in every case, how has the injury been inflicted? but what was the nature of the employment in which the injured person was engaged? In other words, we should look at the employment of the person who was injured, instead of to that of the employe whose negligence caused the injury. The constitutional provision was made for the protection of person in danger, and will be limited to those employes of railroad corporations engaged in work that is inherently dangerous. It will include all employes whose life and limb and safety are not in their own hands, but who are dependent upon others for their safety — persons who are on tracks, or who work about tracks, or whose duties take them on the track and make them absolutely dependent upon the safe management of trains and the·care and vigilance of all persons who are able to control trains. These are the persons who need the protection — the persons who need some special provisions of law.

Several courts have followed the Iowa court, which has gone to an extreme and has applied a statute in favor of persons who are in no way engaged in a dangerous employment. Iowa has a statute which repeals the fellow servant rule in favor of employes who are at work on or about the track, if

injuries are caused by the negligence of persons engaged in work that has any connection with the operation of trains. The Iowa court has declared that an employe at work on or about the track is engaged in hazardous employment, provided he is injured by one who is operating a train, or whose work has some connection with the operation of trains; but if one of these same people is hurt by the negligence of one who has no connection with the operation of trains there can be no recovery. The Iowa court, with this peculiar statute, has been followed by the Kansas supreme court. The Minnesota court, in *LaVallee* v. *St. Paul,* etc., *R. R. Co.,* 40 Minn., 249, 252; 41 N. W., 974, 975, said: "The frequency and magnitude of the dangers to which those employed in operating railroads are exposed; the difficulty, sometime impossibility, of escaping from them with any amount of care when they come; the fact that a great number of men are employed co-operating in the same work, so that no one of them can know all the others, their competence, skill, and care, so that he may be said to voluntarily assume the risk arising from the want of skill and care by any one of the number — are a sufficient reason for applying a rule of liability on the part of the employer to the employe so very different from that ordinarily applied between master and servant. But no just reason can be suggested why such difference should be founded, not on the character of the employment, nor of the dangers to which those employed are exposed, but on the character only of the employer." Later in this same opinion the court indicates that the character of work in which the injured person is engaged should determine whether he is entitled to the benefits of the statute. Again, the Minnesota court said in *Johnson* v. *St. Paul, etc., R. R. Co.,* 43 Minn., 222; 45 N. W., 156; 8 L. R. A., 419: "The only one [limitation] which will furnish any definite or logical rule is to hold that it only applies to those employes who are exposed to the hazards peculiar to the use

and operation of railroads, and whose injuries are the result of such dangers."

A section foreman can take care of himself. He needs no special legislation for his benefit. If it is dangerous to stand near a track because of the possibility of a derailment, then he can easily get farther from the track. If it is dangerous to stand near, he can get far enough away to make himself safe. He is not dependent upon the safe management of trains for his protection. Besides, we think the arguments of counsel are suicidal. They say that it is inherently dangerous to stand near a railroad track, so inherently dangerous that special legislation is needed for the protection of those whose employment keeps them near the track, and yet at the same time they say it was not negligence in this deceased to take his position close by the track while the train was passing at a rapid rate of speed — speed which they say was dangerous. The deceased was in a safe position when the issue of contributory negligence was up for discussion; but, when it comes to determining whether he is one of the employes to be protected by § 193, his position was inherently dangerous. The character of his employment and the danger of his position vary as the several issue come up for discussion.

(5) Further, as to the presumption of negligence invoked by counsel for plaintiffs in this case: We know of a case on which suit has already been filed which illustrates the impossibility of using the amendment of § 1808 of the Annotated Code of 1892, it appearing as § 1985 of the Code of 1906. The case we have in mind is one where an engineer and fireman were out on the road on a locomotive. There was no one else on the locomotive. It ran off the track and the engineer was hurt. He files his suit, and simply declares that he was hurt by a running locomotive, and that he is advised it is the duty of the defendant to exonerate itself. If any person knows the facts about this accident, it is the employe who is bringing the suit. He asks that the presumption be indulged

in his favor. He has all the information; but he proposes to close his lips and require the defendant to produce it. If he can manage to keep it concealed, he being in possession of all of it, then the company must pay for his injuries, whether liable or not, and whether the plaintiff is the author of his own injuries or not. The injustice of this rule — the difficulty of enforcing it along with the other provisions of the said section — are obvious. It is out of harmony with the rest of the section. It is only an appendage. It is tied on, but it is not a part of it. It is like a plank nailed to a growing tree.

Counsel say the presumption, while it was invoked under the statute, was really not needed; for the rule "*res ipsa loquitur*" applies, and in itself serves the purpose of the plaintiffs in this case. This is an unfortunate argument of counsel. Courts have had the same difficulty in making use of the rule "*res ipsa loquitur*" in suits by employes as we have been attempting to point out as arising from the application of our statute. The supreme court of the United States in *Patton* v. *Railroad Co.,* 179 U. S., 658; 21 Sup. Ct., 275; 45 L. Ed., 361, where a locomotive fireman was injured by the turning of a step as he placed his foot on it, emphatically declared that this doctrine could not be invoked by an employe. See, also, *Chicago & N. W. R. Co.* v. *O'Brien,* 132 Fed., 593; 67 C. C. A., 421; *Shandrew* v. *Railroad Co.,* 142 Fed., 320; 73 C. C. A., 430. In the case at bar the presumption is as strong that the deceased himself was the cause of the injury, or one of his section crew, as that any other employe was negligent. It is as strong in the abstract.

But counsel have refused to discuss the proposition that the facts about this occurrence were proved by eyewitnesses. It does not appear that there was anything else that could have been shown by the company. About twenty witnesses who were present undertook to tell the jury how it happened, and to tell them all the details that could be observed. When the facts are known, there is no room left for presumptions. We

take it that there is no question as to the unsoundness of the argument of counsel for appellees to the effect that the presumption holds until the company exonerates itself.   After the facts have been shown, the presumption is no longer of any use and cannot avail one.   The argument of counsel is that, although the railroad company should disclose all the information it has about a casualty of this kind, it is still presumed to be liable unless the information disclosed exonerates it.

(6) Counsel in their argument say something about an agreement that the verdict should be put in proper form. There was no intention by any one to waive any rights by an agreement as to the verdict.   It was only agreed, as is always done, that if the jury brought in a verdict in an irregular form it might be put in proper form.   There was no agreement in this case that the damages awarded by the jury should be distributed in any particular way, or that they should be held to have been given for any particular wrong. There was no agreement that the damages should be held to have been awarded only for the suffering of the deceased himself, or that they should be considered as the very damages that the deceased himself could have recovered if he had lived. The jury awarded damages to everybody, to all the plaintiffs, and they had before them the number of the children, and the ages of the children, and the age of the widow, and the age of the deceased, and the earning capacity of the deceased.   All damages of every kind were awarded.

*Alexander & Alexander,* and *Geo. B. Power,* for appellees.

We brought an action in the name of the administrator, in addition to that for the widow and children, out of abundant caution, in view of the fact that attorneys for railroad companies seem not to have abandoned the hope that this court will recede from its explicit condemnation of the *Hunter case* and again hold that that case was correct, and also that the remedy has not been or cannot be extended to heirs or next of kin.

The majority opinion in *Bussey v. Railroad Co.,* 79 Miss., 597; 31 South., 212, held that the *Hunter case* "nullified the words ' or legal representatives' in § 193." It is difficult to conceive how a decision can be more explicitly condemned, and we deem it settled that the case is overruled and out of the way. But since one of the judges dissented in the *Bussey case,* and the court may be pressed to return to the holding of the *Hunter case,* and since a mistake in bringing the action for death in the name of the wrong plaintiff might be held incurable by amendment after one year, we took the precaution to bring two actions, so that every party having a possible right of action or beneficial interest might appear as suing. If the *Hunter case* was wrongly decided, then it follows that the words "legal or personal representatives" are broad enough to cover heirs or next of kin, and the remedy existed in either form, and all possible objection because of the consolidation vanishes.

It was regrettable that a case as important as the *Hunter case* should have been decided without full discussion by counsel of the important question involved and without some reasoning on the part of the court. The report of the case states that no objection was made in the court below to the form in which the action was brought. The point was made in the supreme court, but not elaborated, and no authorities cited, as to the the meaning of the words "legal representatives," and no discussion had as to the true meaning of § 193. We must believe, if the question had been thoroughly argued and examined, in the light of all the authorities and the context of the clause, the decision would have been different. If the court has not already done so, and is curious to see the conclusions reached by the various courts as to the meaning of the words "legal representatives" the authorities will be found compiled in 25 Ency. L., p. 17. Our own decisions on the point are there listed, viz.: *Allen v. Alliance Trust Co.,* 84 Miss., 319; 36 South., 285; *Grand Gulf R. R. v. Bryan,* 8 Smed. & M., 234. To these we may add *Cushing v. Gibson,*

Walk., 89. These cases, especially those from our own court, settle conclusively that the words " legal representatives " are not confined to executors and administrators, and may include " heirs " or any successors to the beneficial interest of another. The use of the word " legal " along with the word " personal " is persuasive that they bear a different meaning. The learned and distinguished members of the constitutional convention, especially the eminent lawyers on the judiciary committee, ought not lightly to be suspected of tautology. There was not one of them who did not know the usual, as well as the technical, signification of " personal representative." We think the very fact that both words were used convincing that they were not intended to mean the same thing.

But when we look to the law as it existed when the Constitution was adopted, and consider the mischief intended to be remedied, the meaning of § 193 becomes plainer. At common law personal actions did not survive. Lord CAMPBELL's act, changing this, became incorporated in some form into the statutes of all the states. These statutes did not give the damages resulting from the death to the personal representative to be collected as assets of the estate, subject to debts, expenses of administration, payment of legacies, etc. This would have thwarted the obvious purpose of the statutes; for the heirs of insolvents, who most need the protection, would lose it all in favor of creditors. Nor did the statutes give the damages to be inherited by the heirs as such, and as part of the estate. Whoever might institute the suit, the recovery went to those who were supposed to be dependent on the deceased for support; and as " legal representatives," as contradistinguished from " personal representatives," means those who by law succeed to the beneficial interest in the subject-matter, the persons designated in the various statues as those entitled to the damages were the " legal representatives " of the deceased.

How did the statutes stand when the Constitution was adopted? Section 1515, Rev. Code 1880, provided: " If on

the death of any plaintiff, in actions which survive, before verdict, the heir, legatee or devisee, executor, administrator or other legal representatives of such deceased part shall not appear and become a party to such action on or before the second term of the court next after the death of such party shall have been suggested on the record such action shall be dismissed," etc. Here we see that, among those expressly designated as legal representatives, "heirs" are the first to be mentioned. It will be noticed that in all the sections of the Code of 1880 dealing with the death of parties to actions the words "personal representatives" do not appear; but the words "executor and administrator" are used where "personal representatives" are intended. See §§ 1513, 1514, 1518. But where the general term, including any or all who succeed to the beneficial interest of the deceased, are intended, the word "representative," or "legal representative," or "successor," is used. See §§ 1510, 1515, 1517. Looking specially to § 1510, dealing with injuries producing death, we find that the general word "representatives" is used to denote the successors in liability of the defendant. Thus it would cover any persons or corporations, receivers, or others who by law were the successors of the person or corporation which was liable for the damages. The phrase "legal or personal representative" was never one which appeared in our legislation on this subject. In using it in the Constitution, the framers of that instrument were not following a set formula. They were not using terms already in use and having a fixed meaning in our statutes. On the contrary, § 193 was framed in full view of §§ 1510 to 1517, which were the then existing statutes dealing with death of parties to actions and survivorship of causes of actions for injuries causing death. The mischief to be remedied, and which many Legislatures had refused to remedy, was that the benefit of § 1510 was not available, because of the fellow servant rule, where the person negligently killed was an employe of a railroad company.

Another evil and injustice existed which has not yet been ·illustrated in our reported cases, and which would not be corrected unless § 193 provided for suits by the " legal representatives " as well as " personal representatives." It was this: An action might be pending by the injured person himself under the first clause of § 193, and if the plaintiff died the persons specified in § 1515 as being " legal representatives " could not be substituted as plaintiffs, but only the executor or administrator. Surely it was intended by the framers of § 193 that the remedy in case of death of an employe of a railroad company should be commensurate with that of other persons as given by § 1510 and § 1515. The first clause of § 193 gave such employes the same " rights and remedies " as are allowed by law to others not employes; and it was intended by the later clause as to the right and remedy, if death ensued, that both the right and remedy should be the same where such employe was killed as where one not an employe was killed. The language in the two clauses is identical: " Shall have the same rights and remedies as are allowed by law " to others; that is to say, the living employe, when injured, shall have " the same rights and remedies," and if he dies " the same rights and remedies " as pass to others not employes when they are killed shall pass to others.

Section 193 was an enlarging act, not a restrictive one. The clause giving a remedy should be liberally construed in furtherance of the purpose of the section. Prior to the Constitution it had been held in the *Phillips* case that the right of the personal representative to recover for the suffering and loss of decedent up to his death could coexist with the right conferred on legal representatives by § 1510 to recover for losses sustained by them from the death. The first right was very restricted. Indeed, if death was instantaneous, there were no damages recoverable at all by the personal representative. This rule of law was presumably well known to the makers of the Constitution, and it follows that if legal and personal

representatives mean the same thing, viz., executors and administrators, then we find a section enlarging the rights of employes, and intended to make them coextensive in case of injury or death with rights in other cases, really denying all recovery to anybody if death be instantaneous. In other words, if a railroad slightly injures an employe he can recover; if it fatally injures him, and he suffers and dies, the action survives; but if by a greater negligence a greater casualty causes instant death, no one can recover — not the administrator, because the negligence or willfulness was so great as to cause instant death; not the heirs or next of kin, because § 193 made no provision for them to sue in any case. If that be the true construction of § 193, it certainly behooves a railroad company to take care to make a sure, quick job of killing an employe, lest if they fail, and death is delayed or avoided, they be liable for damages. For the honor of the constitutional convention it should be saved from the suspicion of having any such purpose.

The fact that the right of the administrator and of the next of kin were known to coexist is persuasive that in using the words " legal or personal " it was intended to confer the rights and remedies on both or either in case of death of the favored employe. If the right in case of death were given by § 193 only to the executor or administrator as such, and a technical meaning is to be given to the right and remedy so conferred on them, it would follow that they took the right strictly as representatives of the estate of the employe and to be administered as part of the estate. It would be beyond the power of the Legislature to give the damages to the heirs or distributives as against creditors, or to deprive the administrator of the right to commissions on the recovery, or in any way to qualify or change the destination or disposition of the fund recovered. If the right and remedy were in all respects only those technically belonging to an administrator, and not subject to be enlarged or changed in any particular,

then it is beyond the power of the Legislature to take the damages for death away from the administrators and give them, by way of exemptions or otherwise, to the next of kin.

To summarize, if the *Hunter case* is correct, we must impute the following purposes to the Constitution makers:  (1) They ignored the broader generic meaning of the words " legal representatives," as the words then existed in the very statutes whose benefits they were extending to employes of railroads. (2) They were guilty of tautology in using the two distinct words " legal " and " personal "— words not used in juxtaposition in any of the statutes on the subject dealt with.   (3) They gave practically no protection in case of death to the parties intended to be provided for.'  (4) They denied all right and remedy to any one, administrator, or heirs, or next of kin, where the death, even although willfully caused, was instantaneous.   (5) They limited a right to the administrator as such, with no power in the Legislature to designate the beneficiaries of the recovery, or to take it away from the creditors of the estate.   The exemption of the fund from creditors would be in effect conferring the right to it on the heirs. (6) If the injured person died after bringing suit and owed no debts, and there were no one to qualify as administrator and no estate to administer, yet the heirs, etc., and other " legal representatives," designated in § 1515, Rev. Code 1880, could not be substituted as therein provided, because § 193 would forbid it.

Apart from the Lord Campbell act a parent could recover for loss of services of a child.  *Natchez R. R.* v. *Cook,* 63 Miss., 38.   Even this right, if the *Hunter case* be correct, the Constitution operated to forbid the Legislature to confer on the parent of minor employes.   No such purposes, as above, could be imputed to the framers of § 193.   No such results as these were ever contemplated by them.   But for several reasons our case is not dependent on the overruling of the *Hunter case.*   That case was decided before there was any

legislation such as is contained in chapter 65, p. 82, and chapter 66, p. 84, Acts 1898, and § 721 and 4056, Code 1906.   Whatever may be thought as to whether the *Bussey case* overruled the *Hunter case,* it certainly held that it was competent for the Legislature to extend both the rights and remedies conferred by § 193.   The acts of 1898 were adopted to meet and abrogate the rule announced in the *Hunter case,* and this court said " it was perfectly competent for the Legislature to provide additional remedies."   *Bussey* v. *Railroad Co.,* 79 Miss., at pages 610, 611; 31 South., at pages 212, 214. True, chapter 66, p. 84, Acts 1898, was held unconstitutional in so far as it sought to extend the liability created by § 193 to all corporations; but the clauses of chapter 66 which extended the remedy for the rights given by § 193 did not fall with those extending the right.   If the act had dealt only with rights created by it, the right failing, the remedy would fail.   But it dealt with the remedy growing out of § 193, as well as the remedy for the rights sought to be created by that act. It manifested a clear legislative purpose to extend the remedy for the right as given by the Constitution and as given by the act.   Because the act failed of its purpose to extend the liability is no reason why those provisions which extended the remedy for the existing liability should fail.

It is too well settled to call for citation of authorities that one section of a statute will not fall because another is declared unconstitutional, unless the sections are so interdependent that one may not operate without the other.   And the same is true of parts of the same section.   26 Ency. L., 570; *Fant* v. *Gibbs,* 54 Miss., 396.   Chapter 66, p. 84, Acts 1898, gave the right both to the " legal or personal representative " (as it was perhaps required to do by § 193) and also to certain of the next of kin.   If, then chapter 66 is valid in so far as it enlarges the remedy, it was proper to sue as was done in these cases. It might be said that it was improper to join as plaintiffs the children of Hicks, the deceased; that the administrator

and mother were the proper parties, either under § 193, or chapter 66, p. 84, Laws 1898, or both. If this be true, we answer that no objection was made for misjoinder and no reversal can be had for it. But, since the statute gave the damages to the wife and children, it was a harmless error, even if objected to, to join as plaintiffs the beneficiaries of the suit. Bear in mind that our reliance on chapter 66, p. 84, Laws 1898, is made only if the *Hunter case* be held to have been correctly decided.

Another reason why the *Hunter case,* if correct, cannot avail appellant, even if chapter 66, p. 84, Acts 1898, be held void *in toto,* is that § 4056, Code 1906, which re-enacted chapter 66, p. 84, omitting only the unconstitutional feature, became the law before this case was tried. When this Code became law, our suit in the name of the widow and children was pending. The liability of defendant then existed. It was competent for the Legislature to extend the remedy, as it did. As suit had been brought for the liability and was pending, it would have been competent by amendment to substitute the real and proper persons as plaintiffs, even if they were not already plaintiffs. But no amendment was necessary on the adoption of the Code. The proper plaintiffs, under the Constitution and under the Code, were suing as plaintiffs. No amendment was necessary, since the suit was already in the name of the wife. Now it has been held that, where there is no uncertainty as to what cause of action is being sued for, an entirely different plaintiff may be substituted under our liberal provisions as to amendments. See *Kelly* v. *Continental Co.,* 87 Miss., 438; 40 South., 1. If the wife could have been added as plaintiff by amendment, why, if the suit were already in her name, could it not continue in her name without amendment after she was made by the Code the proper party? The action was brought within the year, although in the form the action was brought she could not have then recovered. Before the trial the right in her arose by virtue of the adoption of

the Code, and the suit could properly go on to a trial on the merits.   See *Insurance Co.* v. *Edwards,* 85 Miss., 332; 32 South., 748.

But for still another reason it is not necessary to decide whether the *Hunter case* was correct.   If it be contended, under that case and in advance of the legislation of 1898 and 1906, that the action could be brought only by the administrator, we say that § 193 provided that the legal or personal representatives of employes protected by it shall have the same rights and remedies as are allowed by law to the legal and personal representatives of persons not employes.   This means, of course, not such rights and remedies as were then, in 1890, when the Constitution was adopted, in existence, but such as may from time to time be by law allowed.   The purpose was that at all times the representatives of railroad employes should in the cases stated have whatever rights the representatives of other people might have.   If and whenever the Legislature gave a right or remedy for death by negligent act to the representatives, by whatever name called, of persons not employes, § 193 gave it to its favored employes.   Look to any laws, and find what rights or remedies such representatives of persons generally have, and the Constitution takes it and by force of this provision confers it on the employes of railroads killed by certain fellow servants.   Chapter 65, p. 82, Acts 1898, gave the remedy for the death of persons not protected by § 193 to the next of kin, and on certain conditions to the executor or administrator.   This remedy by virtue of § 193 was at once conferred in case of the death of a railroad employe protected by it.   The plain meaning of these provisions of § 193 is that no person injured by the negligence of another shall ever have any greater right or broader remedy than a railroad employe under § 193, and no legal or person representative of any person negligently killed should ever have any greater right or broader remedy than the representatives of the employes protected by § 193.   This assignment was so

strongly made by *Messrs. Green & Green* in their brief in the recent case (not decided, but compromised) of *Williams* v. *I. C. R. R. Co.,* that we are going to take the liberty of referring to it on this branch of the case.

But if we are wrong in all the foregoing propositions — if the *Hunter case* was correct; if it has not been abrogated by legislation, and if it was necessary to sue under the Constitution by the administrator and under chapter 65, p. 82, Acts 1898, by the widow and children — we say that appellant cannot complain because we did bring the two suits in that way, and appellant's only ground of complaint is that it was prejudiced by the consolidation of the actions. In other words, before appellant can secure a reversal, it must show that all the propositions we have above contended for are untenable, and, in addition, that it was reversible error to try the cases together. It will be noticed that only the most general objection was made to the consolidation. The record merely shows that the motion " was resisted." On what ground does not appear. There was no objection for misjoinder, as required by § 722, Code 1906. But, if the consolidation had been objected to on specific grounds, it was not error to try the two actions together. It is a matter within the discretion of the court whether two or more causes shall be consolidated. The exercise of the discretion will not be reversed, unless in a case of palpable abuse. 8 Cyc., 593. The court of its own motion will often consolidate causes to save expense, time, and trouble. See *McLendon* v. *Pass,* 66 Miss., 110; 5 South., 234; *Pittman* v. *Chrisman,* 59 Miss., 124. Causes by the same plaintiff are frequently consolidated where the defendant is the same; the defenses being the same, determinable by the same evidence. See *Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S., 285; 12 Sup. Ct., 909; 36 L. Ed., 706. In this case the court said: "Where the English consolidation rule has not been adopted, the American courts, state and federal, have exercised the authority of ordering several actions by one

plaintiff against different defendants to be tried together, when-ever the defense is the same, and unnecessary delay and expense will be thereby avoided. *Den* v. *Kimble,* 9 N. J. Law, 335; *Worley* v. *Glentworth,* 10 N. J. Law, 241; *Witherlee* v. *Ocean Ins. Co.,* 24 Pick (Mass.), 67; *Wiede* v. *Insurance Cos.,* Fed. Cas. No. 17,617, 3 Chicago Legal News, 353; *Andrews* v. *Spear,* 4 Dill. (U. S.), 470, Fed. Cas. No. 379; *Keep* v. *Indianapolis & St. Louis R. Co.,* 10 Fed., 454; 3 McCrary (U. S.), 302; 1 Thomp. Trials, § 210. The learning and research of counsel have produced no instance in this country in which such an order, made in the exercise of the discre-tionary power of the court, unrestricted by statute, has been set aside on bill of exceptions or writ of error." In *McLendon* v. *Pass* this court said consolidation would be proper, although the demands were distinct and separate.

But the two actions here were between the same parties beneficially interested, for the same death, calling each for proof of the circumstances and cause of the death, and under the strictest rule governing consolidation was proper. It is certainly to be desired that there be only one trial and recovery for the death of the same person. Prior to the Constitution and the subsequent enlarging acts two actions — one by the " personal " representative, and the other by the legal repre-sentatives. This was vexatious and prejudicial to railroads, and burdensome on the court and litigants. It was therefore provided by chapter 65, p. 82, Acts 1898, that there should be only one suit for the same death; and by chapter 66, p. 84, Acts 1898, now § 4056, Code 1906, the intendment is to avoid separate suits. The damages recovered, however, by whom-soever the suit is brought, if there be a widow and children, belong equally to them. Thus we see the policy of our law is that there be but one action, trial, or recovery. The ben-eficiaries of both suits were identical. We have, then, two suits against the same defendants, the beneficial plaintiffs the same, for the same death, requiring evidence of the same de-

railment. The fact that the nominal plaintiff (the adminis-trator) in one was not a party to the other was immaterial. The damages, if recovered by the administrator, would go to the widow and children in equal shares, free from claims of creditors.

It is said, however, that the measure of damages in the two actions is not the same. It is difficult, if not impossible, to distinguish between the measure of damages given in chapters 65 and 66, pp. 82, 84, Acts 1898. The Constitution is silent as to the measure of damages, except to say the employe, and in case of death his legal or personal representatives, shall have the same rights and remedies as persons not employes, or their legal or personal representatives. If this provision is to be given effect, then the measure of damages (the right) given by chapter 65, p. 82, Laws 1898, inured to those suing under § 193. Of course, that provision of chapter 65 that denies the administrator the right to sue if there are next of kin within the degrees mentioned cannot be taken as limiting § 193, since the right in the personal representative to sue given by § 193 cannot be taken away, although it may be enlarged. However that may be, the administrator under the law as it existed before the Constitution, and certainly under § 193, could recover for the pain, etc., of the person injured, suffered before his death; and under chapter 66, p. 84, Laws 1898 (and under chapter 65, p. 82, Laws 1898, if that applies), the damages sustained by the widow and children could be recovered. Hence we say the effect of the legislation is to practically destroy the differences as to measures of damages. Chapter 65, p. 82, Laws 1898, by requiring that there be only one suit, and making the act applicable to em-ployes, evidences such a purpose. Even if the measure of damages in the two actions were different, this would not prevent consolidation. *McLendon* v. *Pass* and *Pittman* v. *Chrisman* were dealing with entirely distinct demands. Dec-larations often contain distinct counts each for a separate

demand.   The *Abrams case,* 84 Miss., 456; 36 South., 542, did
not condemn the joining in one declaration in separate counts
of a demand under the general law and a demand under § 193.
It condemned as bad pleading as against a demurrer, the join-
ing of such demands in the same count.   In this case the order
of consolidation merely had the effect, as recited, of treating
the two declarations as if they were two counts in a declaration
for the purpose of a trial.

But if the *Hunter case* was correct, and if the remedy was
not enlarged, and if the remedy given by chapter 65, p. 82,
Laws 1898, did not at once inure to those protected by § 193,
and if § 4056, Code 1906, did not have the effect to make
proper the suits as already pending or the consolidation, and
even if the consolidation, and consequent alleged misjoinder,
had been properly objected to, still we say in this case no
reversal can be had for two all-sufficient reasons:

First, there was no instruction asked by defendant as to
the measure of damages in case it should find that the cause
of action arose under § 193.   If defendant relied on this
difference, and there was in fact such a difference as to the
measure of damages, it could have met and cured every
possible or alleged prejudice from the consolidation by ask-
ing instructions as to the measure of damages if the jury
found the negligence was that of the master, and the measure
if it found it was the negligence alone of the engineer.   The
only instruction as to the measure of damages was No. 3, for
plaintiff, which is the simple and elementary statement that
damages for suffering are not punitive.   Such damages are
recoverable, of course, whether the recovery be under § 193,
or by the next of kin under chapter 65.   Instructions Nos. 2
and 3, for defendant, were properly refused, if for no other
reason, because they denied damages resulting to the widow
and children, without regard to what the jury might find as
to the cause of the death.   The defendant had evidence to
show that the engineer was not negligent and the speed not

dangerous. Plaintiff had some evidence that the track was bad, and then there was the presumption given by § 1985. These instructions denied all consideration of damage to the widow and children in any view of the case as made by the pleadings or evidence, and were properly refused, even if we are wrong in all our legal propositions.

Secondly, the jury having found a verdict for " the plaintiff," it was ·agreed by both sides that the meaning of the jury be ascertained by the court and the verdict put in form accordingly; and, the jury having declared that the sum assessed was to cover all damages to the parties lawfully entitled to it, the judgment on it was entered so as to award the damages to plaintiffs " for the benefit of the widow and children." It surely cannot be contended that the widow and children were not the real beneficiaries in both or either of the suits. Where, then, was the error? Where was the prejudice? We have a case where there was no specific objection to the consolidation, no objection for misjoinder, no objection to testimony to show either the negligence of the engineer or a defective track, no instructions allowing or limiting thedamages if this or that cause of death be shown, and, finally, an agreement that the jury may be examined to find the meaning of its verdict, and judgment entered accordingly, and a judgment rendered that is in favor of the real beneficial parties, and the railroad company fully protected against any subsequent suit.

The giving and refusal of instructions presents no questions not discussed in the foregoing pages. It will be noticed that no objections were reserved to any instructions, except in a general objection, and the equally general objection on the motion for a new trial. · This vicious practice of reserving in the most general terms objection to all of the instructions has been often condemned. Since the first part of this brief was written, this practice has been referred to and condemned in the case of *Richberger* v. *State.* The writer sought to have

the Bar Association of the state commit itself to the rule announced by Special Judge THOMPSON, and to have a resolution more emphatically condemning the reservation of mere general objections, since the practice had become quite universal and was resulting in much injustice to the trial court and litigants. All the objections made to the consolidation, to the instructions, and to the evidence in this case fall within the condemnation. There remains for us to notice only two or three points made by appellant, either by the demurrer or in a general way by a motion for a new trial.

The first of these is that the death of Hicks was the result of an accident, pure and simple, which no human ingenuity could have foreseen, and therefore the company is not liable. It is evident that counsel are confusing the question of the probability of some injury resulting from the negligent acts complained of with the question whether the particular injury which did result could be foreseen. The distinction is an elementary one in the law of negligence and damages. It is manifest that the negligent failure to maintain a track, or to keep engines and cars in repair, or running trains at excessive speed may result in derailment. There is nothing improbable or which cannot reasonably be foreseen in the connection between such negligence and the derailment. It is true that it cannot be foreseen just who will be hurt, or in what manner; but that is not the determining question as to liability. Wharton's Law of Negligence (2d ed.) § 77, says: "The fact is that the consequences of negligence are almost invariably surprises. A man may be negligent in a particular matter a thousand times without mischief; yet, though the chance of mischief is one in a thousand, we would continue to hold that the mischief, when it occurs, is imputable to the negligence." The same question is discussed and the same rule announced in *Payne* v. *Georgetown Lumber Co.,* 117 La., 983; 42 South., 475. "In order, however, that a party may be liable in negligence, it is not necessary that he

should have contemplated, or even been able to anticipate, the particular consequences which ensued or the precise injuries sustained by the plaintiff. It is sufficient, if, by the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." 21 Am. & Eng. Ency. Law, 487. This text is supported by so many decisions from so many states and courts that we will not further burden the court with citations.

But we deny, as a matter of fact and common knowledge, that the result was one that was improbable — one not likely to occur from a derailment. It is well known that in cities, towns and villages traversed by railroads, and about all depots, persons are constantly so near the tracks that if a derailment occurred they would probably be injured. It is a matter of common knowledge that railroads are divided into sections embracing six to ten miles; each section having a section gang and foreman always at work on it. The section gang, numbering perhaps fifteen or twenty men, are at every hour of the day at work along the track at some point on the section, and, as freight trains are frequently a quarter of a mile long, it can readily be seen that the derailment of a train is very liable to injure some one working or standing near the track belonging to the section crew. It would be dangerous in the extreme for a court to say that it thought, because it was an improbability that the death of a section foreman was not one of the expected results of a derailment, the company is therefore not liable. It would be but another step to say that no person in a city, town, or village, or about a depot, or where persons are congregated for any reason along a track, can ever recover if injured by a derailment, because as a matter of law the court will assume that if a train is derailed it would leave the track at a point where there are no persons working or standing. The books abound in cases where persons injured under circumstances like that presented by this case have recovered. Cases are not in-

frequent where engines have left the track, and run into houses adjacent to the tracks, and injured the occupants, who never dreamed that they were exposed to the hazards of passing trains. I take it that if a man's house or stock, standing near the right of way, were demolished or injured by a train negligently thrown from the track, no question would be raised as to liability; but it seems that, if a man himself was so injured, a claim would be made that the company was not liable. We will not further discuss this point.

The next point we will notice is that, when killed, Hicks was not exposed to any of the perils incident to the business of railroads, and therefore not within the protection of § 193 of the Constitution. Passing for the present the question whether, in view of the proof and of the presumption of negligence created by the Code, the construction of § 193 is involved, we will briefly discuss the point. It would seem that the first and most obvious answer to the question whether Hicks was exposed to the perils of the ordinary operations of railroads is sufficiently and conclusively answered by the fact that he was killed as a result of being exposed to such a peril and by the actual running of the train. The fact itself answers the argument. It seems little short of an absurdity, in the light of what did happen, to say that Hicks was exposed to no peril. What killed him but the running of a train? It will thus be seen that the question runs back to the one just above discussed. In other words, it will, of course be conceded that as a matter of fact he was exposed to such a peril, and died as a result of being thus exposed. But it will be said that such a danger was very remote, and the peril very slight, and this consequence not one that could be readily anticipated. It will thus be seen that the question is really, not whether as an employe of the railroad company he was exposed to a peril peculiar to railroading, but whether his death was a result which might have been anticipated as one of the probable results of the negligent acts causing the wreck. Thus viewed, no question of the construction of the

Constitution is involved, but a simple question arising under the law of negligence, and this question we have sufficiently discussed above.

The effort of appellant obviously is to inject, if possible, a federal question into the case. They know that, if the court can be led into placing its decision on the construction of the equality clause of the federal Constitution, a writ of error will lie to the supreme court of the United States. We are confident that their effort in this case will fail, for the verdict may be referred to the general presumption of negligence created by the Code of 1906, and therefore the construction of § 193 is not at all necessary. In the next place, if our court holds that § 193 is to be construed as embracing within its protection an employe working as Hicks was working and injured as he was injured, there will be no federal question, since the federal courts will be bound by the construction given by this court to our own Constitution and statutes. But, recurring to the question itself, we say there can be no question that Hicks was exposed to the peril against which § 193 was intended to protect.

The confusion into which counsel have fallen is due to their failure to distinguish between the particular employment in which the injured employe at the time was engaged and the employment in which the negligent coemploye was engaged. As stated in the *Heflin case,* 88 Miss., 362; 42 South., 174, 183, the purpose of the Constitution makers was plain. " They meant such employes as were imperiled by the hazardous nature of the business of operating railroad trains." Summing up the argument, the court said: " In short, the reason which sustains said § 193 of the Constitution being the inherent danger attending the actual operation of railroad trains, the remedy must be limited to those employes whom such danger imperils." Neither this court nor any court has ever said that the injured employe, in order to recover, must be at the time engaged in operating the train. The Constitution protects him, not against

what he himself is doing, but against what his coemployes of certain kinds are doing. The question is, not whether he is at the time operating the train and thus exposing other employes to a peril, but whether in the discharge of his duty he is where the negligence of coemployes operating a train may injure him. This distinction is clearly pointed out in many decisions. It is hardly necessary to inform this court, which has so recently traveled over the whole ground of the constitutionality of this employer's liability act, that by the construction now given to our Constitution by the *Heflin case* it means practically the same as the statutes of Iowa, Kansas, Minnesota, and Missouri, which expressly apply to servants engaged in the operation of the road. The question as to what is a railroad peril has frequently been before these courts, and the precise question here involved has been decided.

A section foreman, engaged in repairing the track for the present operation of trains, is engaged in the business of operating the railroad within the Iowa statute. *Haden* v. *Sioux City, etc., Ry. Co.*, 92 Iowa, 227; 60 N. W., 537. The court said: "It is true that plaintiff was not engaged in the operation of trains in the sense of being an employe on a train; but his work was along and on a track on which trains were operated, and had especial reference to train movements in the way of keeping the track in repair and in condition therefor. His work was of the hazardous kind contemplated by the statute." The court cites many previous Iowa decisions to the same effect. This case of *Haden* v. *Railroad Co.* was discussed and approved in *Dunn* v. *Chicago, etc., R. R. Co.*, decided by the Iowa court in May, 1906. See 130 Iowa, 580; 107 N. W., 616; 6 L. R. A. (N. S.), 452. We refer, also, to a discussion of the Iowa, Minnesota, and Kansas cases in a note to *Jemming* v. *Great Northern Ry. Co.*, 1 L. R. A. (N. S.), 696.

An employe is within the statute who, while working in a ditch along the track, was struck by a piece of coal from the tender of a passing engine. *Croll* v. *Atchison, etc., R. R. Co.*,

57 Kan., 548; 46 Pac., 972. This case is also in point on the question whether the danger was one that was remote or not within the realm of probabilities. It was held that Croll could recover, although the court says that it would seem as if an ordinarily prudent man, standing by the side of the track in the position which Croll was, would not have deemed himself in any danger from a passing train, and probably he would have been censured by the foreman if he had left his work and gone further away from the track because of the passing train. The injury resulted from the fall of a piece of coal as a result of the roughness of the track and the swinging motion of the engine. In the recent case of *Williams* v. *Iowa Central R. R. Co.,* 121 Iowa, 270; 96 N. W., 774, it was held that if the work of an employe exposes him to the hazards arising from the operation of the road he is within the statute, without proof that his employment is in connection with the use and operation of the road. A case almost exactly in point is *Keatley* v. *I. C. R. R. Co.,* 94 Iowa, 685; 63 N. W., 560, where it is held that an employe standing on a derrick platform used in building a side wall, and killed by the wrecking of a train crossing an uncompleted bridge, was within the protection of the statute. The decedent was a mere water boy, having nothing to do in the operation of the road or the building or repairing of the track, yet he was exposed to the peril from the derailment.

It is not necessary to discuss the Missouri cases, since the Missouri court goes a bowshot beyond the Kansas, Minnesota, and Iowa courts, and holds that one in no way engaged in the operation of a road can recover under the statute, although the person inflicting the injury was also not directly engaged in any way in the operation of trains. In other words, in Missouri it is held that injured employes engaged in the repairing of the road can recover, where the injuries were inflicted by employes engaged in similar work as distinguished from those engaged in operating trains. See note to *Dunn* v. *Chicago, etc., R. R.* (Iowa), 6 L. R. A. (N. S.), 452. In *Pyne* v. *C., B. & Q. R. R.*

*Co.,* 54 Iowa, 223; 6 N. W., 281; 37 Am. Rep., 198, a detective of the railroad, walking along the track and injured without negligence on his part by the negligence of an engineer of a passing train, was held to be within the protection of the statute. The distinction we are contending for is clearly shown in *Keatley* v *I. C. R. R. Co.,* 103 Iowa, 283; 72 N. W., 545. We do not cite any further cases, since all the cases in all the states involving this question will be found collated or digested in some of the decisions or notes which we have cited.

No point was made below, and we presume none will be made here, that, if § 193 is to control, Hicks was in a different department of labor from the crew of the passing train. If authority were needed for this fact, many might be given. See, for one authority, *Houston & T. C. R. Co.* v. *Turner* (Tex. Sup.), 91 S. W., 562.

Objection is made that the statutory presumption of negligence, which by § 1985, Code 1906, now applies in favor of employes, can be given no effect by the courts, because the presumption raised is that of negligence of the " servants of the company with reference to such injury," and that, since the servants of the company may be fellow servants, the case of an employe is not helped by the presumption. We are not sure that we fully apprehend the argument of counsel; but, as we understand it, the contention is, notwithstanding the explicit enlargement of the statute to embrace employes and passengers, the court will look away from the statute and consider the wisdom of the provision, and continue to apply the rule which had previously been announced in the *Short case* and the *Trotter case,* and hold that the statute cannot be invoked by an employe. And then it is contended that, if the presumption is invoked, the presumption itself is self-destructive, since it is the negligence of a fellow servant which will be presumed, and this results in nonliability of the company. Of course, this court will not consider the wisdom of the statutory provision, but will give full effect to the statute as amended; but we deny that

the change is unwise, or that the purpose of the enactment is at all obscure. In the *Trotter case* and the *Short case,* and the cases following these, this court, we think erroneously, had ingrafted an exception on the broad provisions of the statute as it then existed, and held expressly, on the ground of public policy, that the benefits of the presumption would not be extended to employes operating the trains and passengers. These decisions were never thoroughly acquiesced in by the members of our profession, and certainly were not thought wise by the code commissioners and the Legislature of 1906. The amendment as inserted in the dummy code extended the presumption to those standing in " contract relations." The Legislature made an immaterial change and extended it to passengers and employes. It only remains to ask whether the courts are going to give effect to this plain provision expressive of the legislative will, or will it attempt to refine it away, as we think in effect was done with the previous statute by the decision in the *Short case.* Will the court again begin to ingraft exceptions on the statute ? The object of the amendment was to abrogate once and for all exceptions which the court had already ingrafted on the previous statute. For the court again to make exceptions would, we think, be to overturn the plain legislative purpose that there shall be no more exceptions.

Counsel for appellant are mistaken in saying that the reason of the new rule created by this statute is not applicable to persons who are on the train, and who are necessarily present at the happening of every accident. The reason for the legislation is found in the fact that the construction given by the court to the former statute, which ingrafted exceptions on it in favor of passengers and employes, was a mischief which the Legislature intended to remedy. It dealt with a statute which had been in existence for very many years, and which had repeatedly been construed by the supreme court. The statute had received a settled construction, and, when re-enacted, it will be, of course, given the construction which it had received, so

far as it remained unchanged, and the amendment will be given such effect as will remove the evil or mischief intended to be remedied. This court has rcently more than once said that it will ingraft no exceptions on the statute forbidding the backing of trains into and along passenger stations, under certain circumstances. Why should the court now ingraft exceptions on this statute, or, rather, why should it seek to eliminate by judicial construction the plain provision that the presumption shall apply in favor of employes? Where does this court get the right to say that the presumption shall apply to certain classes of employes and not to others.

But if the court, looking to a question of public policy, should ingraft any exceptions on the statute, it certainly ought not to hold that one in danger, as Hicks was, was without the reason or spirit of the statute. If, as counsel for appellant say, it would be exceedingly unwise to hold that persons who themselves are actually operating trains, and who most usually by their negligence cause the injury, ought not to have the protection of the statute, this rule would not apply as against Hicks. His duty was merely to look after the condition of the track. Neither the declaration charged, nor did the proof show, that the track at the point of derailment was bad as a result of Hicks' negligence. That was not pleaded. The only charge as to this was that the road was a new road, not ballasted, and necessarily rough, and that it was negligence to establish a schedule so rapid or to run the train so fast as it was run. If a horse or a cow had been standing where Hicks was, and was killed by the appellant, certainly it would be conceded that the presumption would apply in favor of the owner. Where is there any reason, drawn from public policy or elsewhere, why an employe standing in the same place, and unlike the horse or cow, with the right and even under the duty to be there, is not within the protection of the statute? The Legislature thought that a man was of more value than many cows or horses, and that an employe was equally as valuable as any other man.

On the other point, viz., that the presumption is self-destructive, because the negligence presumed may be that of a fellow servant, we need only to say that the court will not impute folly to the Legislature or to the code commissioners. The fellow servant rule at common law and under the Constitution was presumably known to all of the legislators, and certainly to the code commissioners. If the purpose and effect of the amendment was to raise in favor of an injured employe the presumption that a fellow servant was guilty of negligence, and that consequently there was nonliability, we would convict the Legislature of the supreme folly of creating a presumption of nonliability in the effort to create a presumption of liability. If, in order to avail of the presumption, it be necessary for the employe to show that the injury resulted from the negligent act of some employe in a different department of labor, or a superior officer or some employe on a different train, then the presumption would be entirely destroyed. It would be yielding to proof. There is never any need for a presumption after proof of liability is completed. Surely this court will not say that the Legislature meant that, where an employe will take the burden of proof and show that he was in fact injured by one of the excepted classes of fellow servants, he is entitled to the presumption; for the presumption would then be given after it was not needed, and could not be given any application, for, as this court has often said, when the facts are known, presumptions are to be ignored. Of course, it is open to the railroad company always, when the presumption exists, to show that the negligence of a fellow servant was not embraced in § 193. In this case in which we invoke the presumption it was competent for the defendant to have shown that the negligence in fact was the negligence of a fellow servant, if that could have been shown; but no such effort was made. No such defense was set up or pleaded. As stated, when the Code of 1906 was adopted, the statute, as it already existed, had been construed a score of times or more as raising a presumption of liability. The stat-

ute had a settled construction, and that was that the presumption raised by it was one of liability, devolving on the company the burden of exculpation. The statute which had thus been many times construed was re-enacted, and, of course, re-enacted with the settled construction which had been given it; and this presumption of liability was extended in favor of injured employes.

The argument of appellant that, if this amendment be enforced, it will abolish the fellow servant rule and enable employes to recover for injuries occasioned by their own negligence, and would make presumption often more valuable than facts, is an argument addressed to the wisdom of the legislation. It applied to the statute before the amendment was adopted. We have no doubt plaintiffs often recovered verdicts as the result of presumption when, if the facts had all been developed, nonliability would appear. The answer to all this is that the statute is a mere rule of evidence. By shifting the burden of proof, the Legislature merely decided that it was more just that the company should suffer from an inability to show the facts than that the individual should so suffer. It is still open to the defendant, as well as to the plaintiff, to show all the facts; and if these exculpate it, either by showing no negligence or by showing the negligence of a fellow servant, there is no liability. We deny that there is any unwisdom or injustice in giving to employes, who are always exposed to the perils of railroading, less protection than is given to brutes and to trespassers.

We may be pardoned, we hope, for saying that we have more than once in briefs filed in this court argued that the *Dowell case* and *Short case,* in denying presumption to employes on the ground of public policy, would be limited to employes actually on and operating the train at the time. The reason given by the learned judge who wrote the opinion in the *Dowell case,* 61 Miss., 519, has no sort of application to employes engaged in different departments of labor from those operating trains. In a recent case in this court, which, however, was compromised,

we urged on the court to either overrule or limit to this extent the rule announced in the *Short case.* It has now by the enlargement of the statute become unnecessary to press this point. But are we not wasting time in this case discussing whether the statutory presumption applies? The derailment itself raises a presumption of negligence. *" Res ipsa loquitur."* *Brown* v. *Railroad Co.,* 88 Miss., 687, 41 South., 383.

Again, there can be no error in giving an instruction as to the presumption of negligence, where the evidence offered so plainly shows negligence that no other verdict but for plaintiff would stand. Here plaintiff showed by a score of witnesses a very rapid running of the first train ever run carrying passengers over this new road. The road was new, not ballasted, and necessarily rough, the schedule was fifteen miles an hour, the speed actually run was thirty or forty an hour, and the " leaps and bounds " of the train were such as to almost make the hair of the passengers stand on end. The defendant contented itself with saying it did not know what caused the derailment. Regardless of the presumption, no other verdict was proper or possible.

*Chalmers Alexander,* on the same side.

The first assignment of errors by the appellant railroad company is that the lower court erred in overruling its demurrer to the declaration of Mrs. Alice Hicks, administratrix. The second assignment of errors is that the court erred likewise in overruling its demurrer to the second declaration shown in the record — that of Mrs. Hicks, the widow, suing for herself and her children. In so far as the comparative rights of an administratrix and a next of kin are concerned, under the limited view of declaration and demurrer in each case, counsel for appellant do not base argument to any extent; for it is apparent that under consideration of this cause, based merely on declaration and demurrer — whether declaration of administratrix or declaration of next of kin — the lower court was correct in overruling

the demurrer. The state Constitution gave the administratrix the right to sue, as regards the question of the personnel of the plaintiff in the declaration filed by administratrix; and the allegation of death caused by willful negligence of an engineer, " a servant of the defendant company, engaged in another department of labor," etc., showed sufficient stated cause of liability upon the defendant company. And as regards the declaration filed by the widow, Lord CAMPBELL's act (ch. 65, p. 82, acts 1898) states, as regards question of who might file suit under the facts alleged in such declaration (*i.e.,* negligence of the defendant company in having an inexperienced and incapable servant in charge of train, and inadequate equipment), that " this act shall apply to all personal injuries of servants or employes received in the service or business of the master, where such injuries result in death." And, inasmuch as this court has stated that these words cannot be " treated as blank paper," it is evident that, when the lower court passed upon the demurrers, they were correctly overruled. Hon. R. P. WILLING, the special judge, as shown by the record, will not be presumed to have lightly passed over the questions of law to be considered by the demurrers when before him for adjudication. Hence it follows, from the foregoing, that each declaration was valid against demurrer.

The third assignment of error presented by appellant is that the court erred in sustaining the motion of the plaintiffs to consolidate the two causes of action. The fourth is practically the same thing, in other words, namely, that the lower court erred in forcing the appellant company to go to trial on the two causes at once. Now, note the facts, before considering the law: On page 1 of the record the plaintiffs in the two causes " show the court that the cause of action in the two suits is the same, the suit is to recover for the same injury, the same counsel are on both sides the same in each case, and the beneficial parties in interest the same; the declaration in suit No. 950 [suit by administratrix] being taken as a count

in the consolidated suit." Counsel for defendant resisted the
motion (page 2). No ground of objection was, however, shown,
and none appear of record. There was no injury to defendant
in such proceeding. No request was made for continuance.
The issues were the same. There was no need for other wit-
nesses than those necessary before consolidation. The objection
was merely formal, to secure "exception." "The power to
consolidate causes is one of the inherent powers of a court. A
court should always be possessed of the power to make orders
which will expedite its business and prevent costs and multi-
plicity of suits, when one action will answer all purposes of
justice. 4 Ency. Pl. & Pr., 676, under chapter ' Consolidation
of Actions.' " "The inquiry is: Are the questions substan-
tially the same in the suits to be consolidated? Are the defenses
identical, and, in the exercise of a sound discretion, can the
causes of action be consolidated?" 4 Ency. Pl. & Pr., 676.
The granting of motion to consolidate is discretionary with the
trial court. *Id.,* 683. The motion to consolidate may be made
by the plaintiffs. *Id.,* 681. "After consolidation there will
be no setting aside on appeal, except in clear case of abuse of
discretion by lower court." *Id.,* 686. "In absence of legisla-
tion the courts have a common-law jurisdiction to consolidate,
and the power is discretionary." 8 Cyc., 591, 592. "Identity
of parties and subject-matter, same defenses, single verdict, and
judgment to settle issues." 8 Cyc., 595, 596. "The usual
mode of consolidation is by order of the court." 8 Cyc., 601.
Judgment may be rendered according to rights of parties. Sec-
tion 752, Ann. Code 1892; Code 1906, § 813 (brought for-
ward).

From the foregoing, the court will see that under the circum-
stances there was no error in consolidating the two suits. More-
over, the court will note that the jury acted under proper in-
struction, and the counsel for parties agreed, as shown in the
judgment (page 63), that the verdict might be put in form and
the meaning of the jury ascertained by the circuit court, " and

this being by consent done, and the jury having declared that the sum assessed was to cover all damages to the parties lawfully entitled to it, the verdict was so framed accordingly." Now, since "damages recovered shall not be subject to payment of liabilities or debts of deceased," and both declarations claimed damages for the wife and children, the verdict under either declaration to be for an amount (if successful against defendant) to be turned over to the widow and children, how can there have been any prejudice to defendant? If it could be shown that the railroad company was in any way prejudiced by the consolidation of the two suits, the case might be different. But it is self-evident that the railroad company knew that the issue to be met was the question of its liability for the death of Mr. Hicks. It is evident that in many cases a consolidation of suits might for the time being raise questions in the mind of the defendant as to what issues would be presented on the trial. But here it is so manifestly evident that no prejudice resulted to the appellant that this court will not notice this assignment of error.

The brief of our associates has thoroughly covered the questions presented by the Constitution and by the act of 1898, and authorities have been given there to show our contention that, if necessary, this court will again announce its disapproval of the case of *Railroad Co.* v. *Hunter.* Hence we do not touch upon this point in this brief.

Under the wording of the declaration, and under the evidence shown in the record, we think that this case will be affirmed for the evident reason that the excessive speed of the heavy freight train was the cause of the death. We speak of this, not as the negligence alone of the engineer. It was the negligence of the company. If it be, as shown in the evidence without dispute, that the railroad company itself has found it advisable to limit its schedule for freight trains to fifteen miles an hour, or thereabouts, and subsequently the train is allowed to run at a rate of speed of over thirty miles an hour, it speaks for

itself that the master has placed a servant in the responsible position who is incompetent. When we find that the disinterested witnesses were becoming alarmed by the excessively rapid rate of speed, and that just immediately before the accident some of them had arisen from their seats in apprehension of coming danger, when we find that the car was rocking as the train sped downgrade, it is self-evident that, even if the track had been absolutely safe of itself for careful travel, injury must nevertheless have resulted, for the simple reason that, no matter how good the track there must be a time in the increase of speed when the margin of safety is passed. Running a train at the rate of ten miles an hour on a good track is not dangerous. Running a train at the rate of one hundred and fifty miles an hour is dangerous, and for the railroad company in this case to run the first train which carried passengers over its track at a rate which few passenger trains in the whole state equal was manifestly so dangerous that there will be no question in the minds of this court, as there was no question in the minds of the jury, concerning the cause of the injury.

Opposing counsel contend that under the *Heflin case,* which explains the class of servants to whom § 193 of the Constitution is applicable, no recovery can be had, because they say Mr. Hicks was not within this class. According to their contention it must be determined that only the engineer, the fireman, conductor, and brakeman, and possibly flagman on the moving train, can take advantage of the beneficial results of § 193. We know this court will not hold this. We agree with opposing counsel that the peril of a class, and not the peril of one individual person, is what must determine. But the deceased belonged to a class which was and is in as much peril as those upon the running train habitually. There is as much danger to the person habitually around the tracks of a railway system as there is to the person who is upon the train. In fact, judging from the cases which come before this court, more injuries and deaths result from persons upon the track than from per-

sons upon the train. The dead man in this case was in a business which required him to be constantly upon the tracks, where numerous trains were passing every day. When he stood by the side of the track, it was within his province to do so just as much as it was within his province to work upon the tracks when the train had passed. He was not required under the law to do more than step aside when the train should pass. Is it not evident to this court that the danger to employes by the side of the tracks from the escaping of steam as the train passes, from the falling of box car doors, from the jolting of coal from the tender, or careless throwing of objects by employes in this department of labor, make the position of the person upon the ground whose duty calls him to work upon the track as much in danger, or habitually in peril, as the engineer or fireman? This is not the case of the hostler in the roundhouse, which is connected with the main line of track by one spur or switch seldom used. It is not the case of a telegraph operator, who, while an employe of the company, spends his time of work in the second story of the depot building. It is the case of a man who is called by the company to be right in the very atmosphere of smoke from the passing trains — right where trains habitually pass him at a distance of a few feet. It is self-evident that he was in the limited class mentioned by the Chief Justice.

Argued orally by *J. N. Flowers,* for appellant, and by *C. H. Alexander* and *Chalmers Alexander,* for the appellee.

WHITFIELD, C. J., delivered the opinion of the court.

On October 28, 1905, Ray Hicks, a section foreman on appellant's railroad, was working with his crew at a point about two or three miles north of Decatur Junction, in Newton county. The crew had stopped for dinner, but were still on the track and near it, when a mixed passenger and freight train approached. Immediately behind the locomotive were several

freight cars, and a passenger coach was on the back end of the train.   The train was going north.   Hicks and his crew were walking in the same direction; Hicks being further north than the rest of the crew, and on the east side of the track.   He had stepped off a few feet as the train approached.   About the fourth car from the locomotive, when it was at a point about two hundred and eighty feet from Hicks, left the track, and about four other cars were then derailed; two of them falling on the west side of the track, and three on the east side, on which Mr. Hicks was.   The last derailed car seems to have remained on the cross-ties until it reached a point nearly opposite where Hicks was standing, and it then turned over, falling on Hicks and inflicting injuries from which he died in about three days.   There were a passenger coach and a caboose in the train; the passenger coach being at the rear end, and the caboose immediately in front of the coach.   These two cars were filled with passengers on their way to a Baptist Association at Philadelphia, in Neshoba county.   The coach and the caboose did not leave the track, and the passengers were unhurt.

It is shown by the testimony that the schedule fixed by this railroad, for its freight trains, was fifteen miles an hour; that it was a new road, and not ballasted, and hence necessarily rough; that this was the first train ever run over this road carrying passengers, and that the speed at which this first train was actually run was thirty to forty miles an hour; that the passengers were very much alarmed, at the excessive rate of speed, and were in great concern about it, just before the derailment occurred.   We think the testimony shows, with sufficient clearness, that this injury was due to the incompetency of the engineer, which would make the master itself liable, and the excessive rate of speed of this first passenger train over this new, unballasted, and rough road.   There can be no reasonable controversy as to the injury being due to these two causes.   The incompetency of the engineer is manifested by the very nature of the occurrence.   *"Res ipsa loquitur"* fits it perfectly as

showing his gross incompetency.   Hicks was a young man about twenty-eight years of age, in good health, industrious, and of good habits.   He left a widow, twenty-seven years old, and four children, from two to eight years of age.   The jury returned a verdict for the plaintiff for $7,500, and it is from this judgment that this appeal is prosecuted.

Two suits were filed — one by Mrs. Hicks as administratrx, and another by the widow and children.   The administratrix bases her claim upon the allegation that the wreck was caused by the negligence of the engineer in charge of the locomotive running the train at an excessive rate of speed, and on the further fact that the said engineer carelessly, grossly, and recklessly, while the train was running at this dangerous and rapid rate of speed, suddenly checked the speed of the locomotive.   This declaration sets out Hicks' earning capacity at $100 per month, and that he was the sole support of his widow and children, and that he lingered for several days before he died in great agony.   The declaration claimed $30,000 damages, and it is manifestly bottomed on § 193 of the Constitution of 1890.   The second declaration, by Mrs. Hicks for herself and her children, proceeds upon the theory of the negligence of the defendant company in knowingly employing an inexperienced, unskillful, and reckless engineer, as the result of which the train was run at the excessive rate of speed, in view of the condition of the track; and, second, upon the negligence of the engineer, in that he suddenly and wantonly attempted to check the train, and upon the negligence of the defendant company in having improper and defective appliances, trucks of an improper gauge, so that the wheels did not properly fit the tracks, and flanges on the wheels of the first box car. which jumped the track which were worn, defective, and unsafe, and in not having good and sufficient brakes and brake shoes on the car which first jumped the track, so that its speed could be controlled, and in not having said car properly equipped with air brakes, etc.   This declaration also claims $30,000 damages,

and is bottomed, manifestly, on § 3559 of the Code of 1892, which is a rescript of § 193 of the Constitution of 1890, and on ch. 65, p. 82, of the Laws of 1898, as explained later herein. We may say at once, and so dismiss this matter, that the cause on the testimony is bottomed chiefly, if not exclusively, upon the negligence of the master in having in its employ a thoroughly incompetent and reckless engineer, and upon the willful and reckless conduct of this engineer in running this first passenger coach over this new, rough, unballasted road at this excessive rate of speed.

The learned counsel for the appellant set up six defenses, in briefs which we have never seen surpassed, either in ingenuity or profound ability, and which we direct the reporter to set out, together with the very able briefs of learned counsel for appellees, in full, in order that railroad attorneys having cases of like kind hereafter may first read these briefs and know whether they should trouble this court with the suits of that sort which they may have in hand. There ought not to be repeated suits brought to this court by appeal bottomed on the same grounds. Once we have determined a cause, the principles in that cause settled ought to be decisive of all other causes of like nature; and it is because of the exceeding ability and the extreme thoroughness of the briefs of the learned counsel for the appellant, which present, it seems to us, every possible phase that could be given to a case like this, that we thus direct their full publication for the guidance of railroad counsel, and other counsel, in the future, where similar cases arise.

Taking up these defenses in the order in which they are presented, the first is that the injury was an accident, pure and simple. We cannot accept this view. There is nothing improbable, or which might not reasonably be foreseen as logically likely to happen, in the connection between negligence, such as here shown, and derailment. It is true that the railroad company could not possibly foresee what particular person might be hurt, or in what particular manner he might be hurt; but

that is not determinative. The question is: Ought not the company reasonably to have foreseen that sending its first mixed passenger and freight train over this new, rough, unballasted road at a rate of speed nearly three times its schedule rate would necessarily result in derailment, or at least would most probably so result? It is said in 21 Am. & Eng. Ency. of Law, at page 487, that: "In order, however, that a party may be liable in negligence, it is not necessary that he should have contemplated, or even been able to anticipate, the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient if, by the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." See, also, Wharton's Law of Negligence (2d ed.), § 77, and *Payne* v. *Georgetown Lbr. Co.,* 117 La., 983; 42 South., 475. The section foreman and all his crew are constantly near the tracks, working on them, repairing them, and looking after them in every way. These section crews are always at work on the track, or so near it that they are liable to be injured by the constantly passing trains at all hours of the day, and it would be a dangerous doctrine, indeed, to establish that persons thus situated, when injured by a passing train, are injured as the result of accident, pure and simple.

The second contention of learned counsel for appellant is because no evidence was offered in support of any allegation upon which the claims are based, except the one to the effect that the engineer was running at a dangerous rate of speed, and § 3559 of the Code of 1892, under which the suit by the administratrix was brought, is violative of the fourteenth amendment of the federal Constitution. Our first observation with respect to his contention is that it incorrectly states the facts in this: That this action by the administratrix is necessarily bottomed, not only on the negligence of the engineer in running at an excessively dangerous rate of speed, wan-

tonly and willfully, but, as a necessary corollary of this, upon the negligence of the master in having in its employ this utterly incompetent engineer.   We do not deem it necessary to say more than we have heretofore held in *Ballard* v. *Cotton Oil Co.,* 81 Miss., 507; 34 South., 533; 62 L. R. A. 467; 95 Am. St. Rep., 476, and in other cases since, to show that the fourteenth amendment to the federal Constitution is not in any way violated by § 3559 of the Annotated Code of 1892, which was enacted with reference to railroad corporations, grounding liability in this class of causes on the inherently dangerous nature of their business in operating cars by the highly dangerous agency of steam.   On the contrary, we follow the United States supreme court in repeated decisions, pointed out in the case of *Ballard* v. *Cotton Oil Co.,* in maintaining the constitutionality of this statute relating to railroad corporations.   We refer to that case, and the cases since, and with that dismiss this contention.   It is certainly unnecessary to repeat what we have once so thoroughly and at such great length pointed out.

The third contention of learned counsel for the appellant is that " it plainly appears that the deceased did not belong to that class of employes for whose benefit § 3559 of the Annotated Code of 1892 and § 193 of the state Constitution of 1890 were made."   Ingenuity and ability have both been exhausted in the effort to maintain this contention; but a close and careful analysis shows clearly that it is artificial and unsound.   Perhaps the best answer of all to this contention that Hicks did not belong to a class of employes, the nature of whose employment exposed them to the inherent perils attending the operation of railroad trains, is the fact that he was killed by one of the cars composing the train.   " *Res ipsa loquitur* " again suffices.   It is useless to say that Hicks was exposed to no such peril, in the light of the fact that it was just such a peril which resulted in inflicting upon him death.   He was killed by the running of the train.   Really, the argument is not accurately stated in saying that he was not exposed at all

to such peril; but it is, exactly, that the peril was so remote, the danger so unusual, that the consequences to be apprehended from the peril could not readily be foreseen. This is the true gist of the argument presented by the learned counsel for the appellant, reduced to its genuine analysis. And, thus viewed, it is manifest that there is really no question of the construction of § 193 of the Constitution involved, but a mere question arising under the ordinary general law of negligence, and we have already fully covered this in what we have above said. We may add to this the further statement that the verdict may be properly referred to the general presumption of negligence created by § 1985 of the Code of 1906, which is as follows: " Injury to Persons or Property by Railroads *Prima Facie* Evidence of Want of Skill, etc. In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotives, or cars of such company, shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. This section shall also apply to passengers and employes of railroad companies." The last clause of this section is an amendment of the previously existing law. In other words, Hicks was plainly one of the class of employes, under § 193, exposed, from the nature of his employment, to the perils attending the inherent danger of operating railroad cars. Whilst, at the same time, the verdict here is maintainable under the presumption created by this statute, it is very true, as counsel for appellant say, that it is not instances which are to be classified, but employments. Section 193 of the Constitution, nevertheless, protects the injured employe, not against what he himself is doing, but against what his coemployes of certain kinds are doing. The inquiry is not whether he is at the time operating a train, and thus exposing other employes to a peril, but whether, in the discharge of his duty, he is where the negligence of certain coemployes operating the train may injure him. This is the construction we have

given to § 193 in the recent case of *Bradford Construction Co.*
v. *Heflin,* 88 Miss., 362; 42 South., 174, and this construction
is in harmony with the supreme courts in the states of Iowa,
Kansas, Minnesota, and Missouri construing their employer's
liability statutes.    In the case of *Haden* v. *Sioux City, etc., Ry.
Co.,* 92 Iowa, 227; 60 N. W., 537, the court said:    " It is true
that plaintiff was not engaged in the operation of trains in the
sense of being an employe on a train; but his work was along
and on a track on which trains were operated, and had especial
reference to train movements in the way of keeping the track
in repair and in condition therefor.    His work was of the haz-
ardous kind contemplated by the statute."    See, particularly,
the note to *Jemming* v. *Great Northern Ry. Co.,* 96 Minn., 302;
104 N. W., 1079; 1 L. R. A. (N. S.), 696.    It was held in
*Croll* v. *Atchison, etc., Ry. Co.,* 57 Kan., 548; 46 Pac. 976,
that an employe was, within their statute, one who, while
working on a ditch along the track, was struck by a piece of coal
from the tender of a passing engine.    In another case, to which
we make special reference (*Keatley* v. *I. C. R. R. Co.,* 94 Iowa,
685; 63 N. W., 560), it was held that an employe, standing
on a derrick platform used in building a side wall, and killed
by the wrecking of a train crossing an uncompleted bridge, was
within the protection of the statute in that state.    The decedent
was a mere water boy, having nothing to do in the operation of
the road, or in the building or repairing of the track.    Yet he
was exposed to the peril from derailment.    See *Keatley* v. *I.
C. R. R.,* 103 Iowa, 283; 72 N. W. 545, and the other cases
cited in the brief of learned counsel for the appellee.    It may
be remarked here that there is no contention, since there could
be none, that Hicks was not in a different department of labor
from that in which the crew of the passing train was.

The fifth contention of the learned counsel for the appellant
is that the court gave an instruction for the plaintiffs and denied
an instruction for the defendant upon the theory that the plain-
tiffs were entitled to the benefit of the presumption created by

§ 1808 of the Annotated Code of 1892, which is § 1985 of the Code of 1906. We have had this section set out before in this opinion, and refer to it again here. It is perfectly obvious that the amendment to this section was intended, both by the commissioners, in the form in which they expressed it in the dummy code, and by the Legislature, in the somewhat different form in which they expressed it in the last clause of the section, to utterly abrogate the construction by this court of said section, as it appeared in § 1808 of the Annotated Code of 1892, in the *Trotter case,* 60 Miss., 442, the *Short case,* 69 Miss., 484; 13 South., 826, and the *Humphries case,* 93 Miss., 721; 36 South, 154. That erroneous construction of the statute, as it originally existed in the form of § 1808 of the Code of 1892, has been, by this legislative amendment, utterly abrogated. The Legislature was manifestly dissatisfied with the limitation ingrafted upon the plain language of § 1808 by this court in the cases named, and determined to frame a new amendment, which could not be pared away. The Code commissioners in the dummy code had amended the section (§ 1808 of the Annotated Code of 1892) so as to make this presumption attach in favor of all standing in " contract relations " to the railroad. The Legislature made an immaterial change, and extended said presumption to passengers and employes. It is perfectly idle, in the face of this plain declaration of the Legislature, to argue any further that employes and passengers are not to be given the benefit of this presumption. It is clear, however, in any possible view, that this particular employe, Hicks, was engaged in a different department of service from the employes on the train who caused his injury; not a fellow servant at all, and hence we think, under § 193 of the Constitution, he is clearly within the reason and spirit of this presumption, and entitled to its benefit, whatever may be the true construction, generally, of this section. So that in no event could the benefit of this presumption of the facts of this case be denied to this employe, Hicks, such as he was, and situated as he

was, and injured under the circumstances under which he was injured.

The strongest argument made by the learned counsel for the appellant against allowing this section to extend the benefit of this presumption to all employes is that it might, in certain peculiar cases, result in extending the presumption to cases where the negligence presumed might be that of a fellow servant. This is not a sound construction of this statute. It would impute to the Legislature absolute folly to give it this construction, and this we must never do, if it can possibly be avoided. If the purpose of this amendment was to raise, in favor of an injured employe, the presumption that the negligence was the negligence of a fellow servant, this would result, instantly, in no liability; and if this purpose is attributed to the Legislature it would be convicted of the absurdity of creating a presumption of nonliability in the effort to create a presumption of liability. As well said by counsel for appellee: " If, in order to avail of the presumption, it be necessary for the employe to show that the injury resulted from the negligent act of some employe in a different department of labor, or of some superior officer, etc., then the presumption would be entirely destroyed. It would be yielding to proof. There is never any need for a presumption after proof of liability is completed. Surely this court will not say that the Legislature meant that where an employe will take the burden of proof, and show that he was in fact injured by one of the excepted classes of fellow servants, he is entitled to the presumption; for the presumption would then be given after it was not needed, and could not have any application, for, as has often been held by this court, when the facts are known, presumptions are to be ignored. Of course, it is open to the railroad company always, when the presumption exists, to show that the negligence of a fellow servant was not embraced in § 193. In this case, in which we invoke the presumption, it was competent for the defendant to have shown that the negligence, in fact, was the negligence of a

fellow servant, if that could have been shown; but no such effort was made — no such defense was set up or pleaded."

So far as concerns the point pressed, that there may be cases in which an employe would be given the benefit of the presumption of negligence where on the disclosed evidence it would appear that the negligent employe was a fellow servant, it is sufficient to say that it is manifestly the duty of the railroad company to make that showing itself, since it is defensive, and since, when made, it will end, not only presumptions, but the whole case of the plaintiff. And it is further to be said, on this precise point, that if there should ever occur the extreme case suggested by appellant's counsel, in which the plaintiff, an employe, should stand upon the presumption of liability given by the statute, when he had within his command the proof showing that the negligence in the given case was the negligence of a fellow servant, and hence that there was no liability, then it is to be said, with respect to such extraordinary case — rarely ever possible to happen — that it is better, on the ground of public policy, that the presumption should be given the employe, even in that case, standing upon the presumption alone, without any testimony whatever, than that the railroad company should be released from possible liability on the presumption alone, when in nearly every possible case the company has itself the completest and fullest knowledge of how the injury happened, and should produce it in exculpation of itself; and, second, that the danger suggested of a fraudulent employe's recovering, on a presumption alone, when he himself has in his power the production of the testimony showing how the injury happened, and that it happened in a way exculpating the defendant, is far more fanciful than real, because of the obvious fact that it would always be in the easy power of the defendant company to put the plaintiff himself on the stand and compel him under oath, through the testimony within his power, to show the real truth as to how the injury happened. It will never do, in the practical administration of justice, to minimize or pare away

the power and value of this presumption, bottomed on a great public policy, wise and wholesome, by fanciful conjectures as to what might, in some peculiar case, possibly take place. It is to what will generally, and usually, and ordinarily, happen, in the application of this presumption, that we should look, and not to the dimly possible occurrence of a fraudulent suit, such as suggested. Indeed, we dismiss this contention of appellant with the emphatic declaration that none of the difficulties in which the court has been involved, by the ill-considered announcements in the *Trotter case,* 60 Miss., 442; *Short case,* 69 Miss., 848; 13 South., 826, and the *Humphries case,* 83 Miss., 721; 36 South., 154, would ever have occurred if the court, disregarding the awkwardness of the language of the Legislature in § 1808 of the Annotated Code of 1892, and looking, as it ought to have looked, to the spirit and purpose and scope of the section, had held, as we now hold, that the statute was intended to establish a rule of *prima facie* evidence of liability on the part of the company itself in favor of those named in the statute. It should have been interpreted precisely as if it had been written thus: " Proof of injury inflicted by the running of locomotives or cars of such company shall be *prima facie* evidence of liability on the part of the company." That was plainly the thought and the purpose dominating the statutes, and that purpose should have been given effect, and the awkwardness of the legislative language disregarded. To all which it may be added that, since the proof clearly shows the negligence of both the master and the engineer caused the injury, appellees were under no necessity of invoking this prsumption at all.

The sixth contention of the learned counsel for the appellant is that the court should have given a peremptory instruction for the appellant. This, of course, is untenable.

The last and most serious contention of the learned counsel for the appellant, No. 4 in the order as assigned, is that the two causes were improperly consolidated. This contention rests

mainly upon the proposition that under § 193 of the Constitution, and under § 3559 of the Annotated Code of 1892, which is a mere rescript of said § 193 of the Constitution, no action could be brought on behalf of an employe who had been killed, except by his personal representative — that is to say, his executor or administrator, as held in the case of *Hunter* v. *Railroad Co.,* 70 Miss., 471; 12 South., 482 — and the argument of the learned counsel proceeds mainly upon the theory that the *Hunter case* is still the law.   This is an entire misconception. The *Hunter case* was practically overruled in the *Bussey case,* 79 Miss., 597; 31 South., 212, and expressly overruled recently in the case of *Y. & M. V. R. R. Co.* v. *Washington et al.,* 45 South., 614.   In other words, it was perfectly competent, under § 193 of the Constitution, and, of course, under § 3559, Ann. Code 1892, for the widow and children — that is to say, the legal representatives — of Hicks to have brought the suit which they did bring here to recover what he was worth to them as a breadwinner.   It would also have been competent for Mrs. Hicks to have brought a suit as administratrix, under the same sections, to recover the damages sustained by Hicks himself, but for the provision for but one suit in ch. 65, p. 82, acts of 1898, as shown hereinafter.   Learned counsel for the appellant admit, in their second brief, that if the two suits were unnecessary, and the administratrix could have sued for all damages claimed in both suits, or if the widow and children could have sued for all such damages, then they are willing to concede that they were not prejudiced by the consolidation.   This concession ends the controversy on this point, for there are two views, on either of which it is clear that not only were two suits unnecessary, but that only one could be instituted.

Now, as to the first of these views:   When this suit was instituted, ch. 65, p. 82, of the Laws of 1898, now § 721, Code of 1906, was in full force.   That chapter was as follows:

" Section 1. Be it enacted by the Legislature of the state of Mississippi, that the act of the Legislature of said state, ap-

proved March 23, 1896, being entitled "An act to amend § 633 of the Annotated Code of 1892, as to actions causing death, and exempting damages, recovered for personal injuries," be amended so as to read as follows:

" Chapter 86.— An act to amend § 663 of the Annotated Code of 1892, as to actions for causing death, and exempting damages recovered for personal injuries.

" Section 1. Be it enacted by the Legislature of the state of Mississippi, that § 663 of the Annotated Code of 1892 be so amended as to read as follows: Whenever the death of any person shall be caused by any real, wrongful or negligent act, or omission, or by such unsafe machinery, way or appliances, as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, and such deceased person shall have left a widow and children, or both, or husband, or mother, or sister, or brother, the person or corporation, or both, that would have been liable if death had not ensued, and the representative of such person shall be liable for damages, notwithstanding the death, and the fact that death is instantaneous shall, in no case, affect the right of recovery. The action for such damages may be brought in the name of the widow for the death of the husband, or by the husband for the death of the wife, or by a parent for the death of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or by a brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one suit for the same death, which suit shall enure for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits. In such action the party or parties suing shall recover such damages as the jury may, taking into consideration all damages of every kind to the decedent and all damages of every kind to any and

all parties interested in the suit. Executors or administrators shall not sue for damages for injury causing death except as below provided; but every such action shall be commenced within one year after the death of such deceased person.

" Sec. 2. This act shall apply to all personal injuries of servants or employes received in the service or business of the master or employer, where such injuries result in death.

" Sec. 3. Damages recovered under the provisions of this act shall not be subject to the payment of the debts or liabilities of the deceased, and such damages shall be distributed as follows: Damages for the injury and death of a married man shall be equally distributed to his wife and children, and if he has no children all shall go to his wife; damages for the injury and death of a married woman shall be equally distributed to the husband and children, and if she has no children all shall go to the husband; if the deceased has no husband nor wife, the damages shall be distributed equally to the children; if the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or to such of them as the deceased may have living at his or her death. If the deceased have neither husband or wife, or children, or father, or mother, or sister, or brother, then the damages shall go to the legal representatives, subject to debts and general distribution, and the executor may sue for and recover such damages on the same terms as are prescribed for recovery by the next of kin in sec. 1 of this act, and the fact that deceased was instantly killed, shall not affect the right of the legal representatives to recover.

" Sec. 4. All suits pending in any court at the time of the approval of this act and which were also pending at the time said chapter went into effect, shall not be affected by any of its provisions; but all such suits shall be conducted and concluded under the laws in force prior to the time of the approval of said act, on March 23, 1896.

" Approved January 27, 1898."

This chapter has been recently construed by us in the case of *Pickens* v. *I. C. R. R. Co.,* 45 South., 868, in a case in which the suit was brought to recover damages for the death of one not an employe; that is to say, under our statutory provisions embodying the doctrine of Lord CAMPBELL's act, which had their final expression at that time, and when this present suit was brought, in said ch. 65, p. 82, of the Laws of 1898. In that case we said: "It is apparent from the act cited that there can be but one cause of action for any injury producing the death of any party. This statute was enacted for the purpose of uniting in one suit all causes of action which might have heretofore existed for any injury whereby the death of the party was produced. Whatever may have been the common-law rule upon this subject, this is now the rule in this state under the act and section above quoted. The law expressly provides that, ' whenever the death of any person shall be caused by any real, wrongful or negligent act,' etc., ' as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof,' etc., and then proceeds to say that ' in such action '— that is to say, in an action for damage for the death of a person caused by a wrongful or negligent act, etc.—' the party or parties shall recover such damage as the jury may, taking into consideration all damage of every kind to the decedent and all damage of every kind to any and all parties interested in the suit.' This chapter provides expressly that there shall be one suit, and that in that suit there shall be but one recovery, and that recovery shall be for all damages of every kind to the decedent and all damage of every kind to any and all parties interested in the suit."

That act further provided, we may now add, that there might also be an action brought by the personal representative — that is to say, the executor or administrator — of the deceased, not an employe, and authorizes the recovery by the personal representative to be for all the damages both to the decedent and to

the widow and children; that is to say, authorizes the personal representative to recover for the legal representatives. But it added two restrictions in respect to this suit by the personal representative: First, that suit could never be brought conjointly with the suit by the widow or other legal representatives, but could only be brought when there were no next kin at all; and, secondly, the act provided that in that case the amount recovered by the personal representative should be subject to debts. In other words, the cause of action given to the personal representative, so far as recovery is concerned, is coextensive in all respects with that given to the legal representative; and that act further provided that the damage for injury and death, recovered, should be exempt to the wife and other legal representatives, and should be distributed as specified in the statute, and, finally — and this is a most important provision — the second section of the act provided expressly as follows: " This act shall apply to all personal injuries of servants or employes received in the service or business of the master or employer, where such injuries result in death." Now, the first view which we have above referred to is this: That this ch. 65, with all of its rights and remedies — the last expression, at the time of the institution of this suit, of the doctrine of Lord CAMPBELL'S act, intended for those not employes — is by § 193 of the Constitution itself made directly applicable to and available by the employes empowered by said § 193 to recover in the states of case therein named. This view was first presented to this court by *Messrs. Green & Green,* attorneys of record for appellee, in a brief of surpassing ability which ought to be in the hands of every lawyer in the state. In the case of *I. C. R. R. Co.* v. *Fannie Williams et al.,* recently pending here, but compromised, we gave the view presented by that brief the most careful consideration at that time, and would then have announced our concurrence in it had the case not been settled. We now quote from that brief the following clear statement of

this view, which we now adopt as the true construction of § 193:

" ' Every employe of a railroad corporation shall have the same rights and remedies for an injury suffered by him by the act or omission of said corporation or its employes as are allowed by law to other persons not employes ' in the specified cases. ' Where death ensues for an injury to an employe, the legal or personal representatives of the person injured shall have the same right and remedies as are allowed by law to such representatives of other persons, . . . and this section shall not be construed to deprive an employe of a corporation, or his legal or personal representative, of any right or remedy that he now has by the law of the land. The Legislature may extend the remedies herein provided for to any other class of employes.' By the first paragraph injured fellow servants, who live, in the specified cases, are to have the same rights and remedies as are allowed by law to persons not employes. This places fellow servants, in the specified cases, in the same legal position as if they were not fellow servants, but were other persons not employes. Their rights and remedies are to be the same ' as are allowed by law.' Not those now allowed by law only; but their rights and remedies are to follow and be governed by the rights and remedies by law applicable to such other persons. If the rights and remedies of other persons are extended or restricted by law, then those of fellow servants in the specified cases, and in the same degree, are to be extended or restricted. The rights and remedies of both are to be such ' as are allowed by law.' There is no limitation in this language upon the power of the Legislature to extend the rights and remedies of persons not employes. The legislative power is unrestrained in this regard. But if there is allowed by the Legislature, by law, any other rights and remedies, then those of fellow servants follow; for they are to ' have the same rights and remedies as are allowed by law to persons not employes.' The power of the Legislature to extend the rights and remedies

of employes, even irrespective of other persons, was held to exist in *Bussey's case,* 79 Miss., 579; 31 South., 212. The classification of the rights and remedies of fellow servants in the specified cases, and of other persons, for torts, is thus made the same; and after thus made the same by the Constitution, it would be beyond the power of the Legislature to create a new right or remedy for other persons, in this regard, that would not extend to fellow servants in the specified cases. The Legislature would have power, *toties quoties,* to change, by enlargement or restriction, the rights and remedies of persons not employes for injuries; and if it does change them, then, as a constitutional sequence, those of fellow servants in the specified cases are changed accordingly. Therefore, when the rights of other persons were changed by the enlargement of the rights under § 1510 (Lord CAMPBELL's act), Code 1880, by ch. 65, p. 82, Laws 1898, by the mandate of the Constitution those of fellow servants in the specified cases were enlarged accordingly. This would be true, whether the fellow servants were referred to in the act or not; for the creation of a right or remedy for other persons not employes, by this self-executing provision of the Constitution, *ipso facto,* extends to fellow servants in the specified cases.

"But the Legislature, mindful of this mandate, and to exclude a conclusion, enacted § 2, ch. 65, p. 83, extending the act to employes of corporations. In this aspect it is immaterial that the Legislature undertook to amend § 193 by ch. 66, p. 84, Laws 1898, and whether ch. 66, p. 84, Laws 1898, is constitutional as class legislation or not. Chapter 65, p. 82, Laws 1898, *propria vigore,* became a part of the right and remedies ' allowed by law ' to other persons, and hence to fellow servants in the specified cases; and ch. 66, p. 84, so far as the rights and remedies allowed by ch. 65, p. 82, and § 193, were concerned, was superfluous and unnecessary. The result of the Constitution giving the same rights and remedies to fellow servants in the specified cases as to persons not employes is that the com-

mon-law remedies for injuries to persons not employes, as well as any legislative rights or remedies created in behalf of said other persons, would in the specified cases be extended to and be allowed to fellow servants. 'As are allowed by law' means by common or statutory law. It is to be noted that it does not confine its beneficent effects (made necessary as constitutional legislation because of the many failures of the Legislature to act — *Bussey's case,* 79 Miss., 607; 31 South., 212) to such rights and remedies as are now allowed by law to this class of persons not employes. To show that it was not intended to take away the rights and remedies of any employe then existing, but to extend the same, a subsequent provision of the section declares: 'And this section shall not be construed to deprive any employe of a corporation, or his legal or personal representative, of any right or remedy that he now has by the law of the land.' It was necessary to enact § 193, for the then settled construction of § 1510, Rev. Code 1880 (Lord Campbell's act), was that it did not affect the fellow servant rule. 8 Am. & Eng. Ency. Law (2d ed.), 867.

" The next paragraph of § 193, after defining the specified cases in which the fellow servant does not assume the risk of the negligence of fellow servants, nor of defective machinery or appliances, provides: ' Where death ensues from an injury to an employe, the legal or personal representatives of the person injured shall have the same right and remedies as are allowed by law to such representatives of other persons.' Thus the legislation applicable to persons not employes where death results from an injury, becomes extended to the legal or personal representatives of an employe. The first clause of § 193, *supra,* deals with the rights and remedies of employes where death ensues from the injury. At common law there was no cause of action for a death, and no survival of a cause of action for a tort resulting in death. *Railroad* v. *Pendergrass,* 69 Miss., 430, 431; 12 South., 954. The Legislature, following Lord Campbell's act, had enacted §§ 1510, 2078, and 2079,

Rev. Code (1880 (§ §663, 1916, and 1917, Ann. Code 1892),
for ' other reasons,' and had unlimited power to make exten-
sions or restrictions of legislation on this subject. The consti-
tutional intent was that whatever legislation, whether it affected
the rights or the remedies, might be enacted for other persons
than employes, should be applicable to employes where death
ensued. The constitutional convention, as said in the *Bussey
case,* took this legislation in hand with a view to secure the
legal or personal representative of employes of corporations the
same rights and remedies for injuries resulting in death ' as
are allowed by law to such representatives of other persons.'
They were all to be classed alike, and the Legislature was not
allowed ' to make fish of one and fowl of another.' As stated
*supra,* commenting on this identical language in the first clause,
the Legislature was not limited or restricted in its power to
legislate on this subject as to other persons; but the mandate
was that whatever right or remedy is allowed by law to the
legal or personal representatives of persons not employes, where
death ensues, shall extend to employes. This is a constitutional
rider upon all legislation, present and future, on this subject-
matter."

Section 193, we may now point out, did not define what the
rights or what the remedies were which it provided for the
particular employe if he lived, or for his personal or legal repre-
sentatives if he was killed. The only attempt at definition of
either these rights or these remedies is to be found in this
phrase: " Every employe of a railroad corporation shall have
the same rights and remedies . . . as are allowed by law
to other persons not employes "— and further down in the said
section in these words: " Legal or personal representatives of
the person injured shall have the same rights and remedies as
are allowed by law to such representatives of other persons."
" The same rights and remedies," says the section, " as are
allowed by law to persons not ‘employes," and to the legal and
personal representatives of persons not employes. " The same

rights and remedies." What rights and remedies? The same as are allowed by law to persons not employes, etc. In other words, when you come to ascertain what the rights and what the remedies precisely are, you are to look for the legislation which allows persons not employes to sue; and, having found that, sec. 193, *proprio vigore,* is self-executing fashion, *ipso facto* makes all such rights and remedies, then or thereafter, allowed by law, available to and usable by the particular employes empowered to sue by sec. 193 in the states of case therein named. Nor is there any well-founded objection against this view to be worked out of the last clause of sec. 193 of the Constitution, which provides that " the Legislature may extend the remedies herein provided for to any other class of employes," because, obviously, it is thereby meant that, when the Legislature makes such extention to other classes of employes, the extension shall carry to such other class or classes of employes the rights and remedies secured by sec. 193 in the same manner and to the same extent precisely that sec. 193 itself gave the particular employes of railroad corporations named in it.

Nor is there any merit in the objection made by the learned counsel for the appellant that this view is in conflict with the case of *Bussey* v. *Railroad Co.,* 79 Miss., 597; 31 South., 212. On the contrary, as said in the brief of *Messrs. Green & Green,* attorneys, from which we have so liberally quoted: " In all of its essential elements this interpretation is supported in the *Bussey case* and in the *Ballard case.* In *Y. & M. V. R. R. Co.* v. *Schraag,* 84 Miss., 125; 36 South., 193, there is favorable support found for this interpretation of chapter 65, p. 82, Laws 1898." This statement of the eminent counsel is strictly correct. The *Bussey case* was dealing with a wholly different phase of sec. 193 from that here involved. The specific object of that decision was to discriminate carefully between the provisions of our law embodying the doctrine of Lord CAMPBELL's act and the provisions of sec. 193, and the subsequent statutes seeking to carry out its purpose, which related

alone to the rights and remedies of the special employes of rail-road corporations named in it.    We held in that case that all the provisions of law embodying Lord CAMPBELL's act related to those not employes, and that sec. 193 and its consequent statutes related to certain particular employes named in said section. We carefully pointed out that these two schemes, one wholly statutory and the other constitutional and statutory, were .wholly distinct from and independent of each other, so far as their origin, their history, and their purpose were concerned; but it does not at all logically follow, from this pointing out of the difference between the two schemes, that sec. 193 of the Constitution could not and did not, *ipso facto,* provide, without any legislation whatever, that all legislation affecting the rights and remedies of those not employes, whether enlarging or re-stricting those rights and remedies, should immediately upon the passage of such legislation, at the time of the adoption of the Constitution or thereafter, by virtue alone of this very section of the Constitution, inure to and become available by the class or classes of employes named in said sec. 193, or thereafter added, in pursuance of its last clause, by the Legisla-ture.    The difference in the origin of the two schemes, the difference in their history, and the difference in the nature of the actions provided by them, respectively, in no sort of way prevented the Constitution from providing that all the rem-edies and rights given to persons not employes should become instantly available by and inure to that class of employes embraced either in said sec. 193 itself or in any subsequent legislation extending the rights and remedies to other employes, as provided in the last clause of said section.    It follows, in-exorably, from the phrase " same rights and same remedies," that there never can be a time, while sec. 193 of the Constitution is in force, when the rights and remedies given to those not employes shall be in any wise different from the rights and remedies conferred by sec. 193 of the Constitution on the em-ployes named therein.    It must be clear from this analysis of

sec. 193 of the Constitution that there is nothing in the point as to the impropriety of the consolidation of the two suits.   It is simply to be said that the suit by the administratrix was entirely superfluous and improper, and the learned counsel for appellant very properly admit that in this view they cannot claim that the consolidation prejudicially affected appellant in any wise.

We pass now to the second view, on which it is seen that only one suit could be instituted — that by the widow or the widow and children — and that that suit was to be instituted under and governed in all respects by this same ch. 65, p. 82, Laws 1898, and that view is this:   That sec. 2 of said ch. 65 expressly declared that that act should apply to all personal injuries that servants or employes received in the service or business of the master or employer, where such injuries resulted in death.   In other words, this sec. 2, ch. 65, p. 83, which was in force when this suit was brought, entirely independently of sec. 193, attempted to confer expressly all the benefit of ch. 65 as to rights and as to remedies upon the employes of the master where the injuries, as here, resulted in death.   We expressly pointed out in the *Bussey case,* 79 Miss., 609, 31 South., 212, that the language of sec. 2 could not be read as blank paper, and held that it expressly applied the principle of Lord CAMPBELL's act to empolyes where the injuries resulted in death.   If, therefore, it could properly be said, as manifestly it cannot, that the construction we have given sec. 193 on this subject in the first view presented above was erroneous, then undoubtedly this sec. 2 expressly clothed this employe of this master with all the remedies and all the rights provided by ch. 65, p. 82, of the Laws 1898.   If it be said that this was taking the last expression of the principles of Lord CAMPBELL's act formulated in said ch. 65, p. 82, relating to persons not employes, and clothing persons who were employes with the same rights and the same remedies, the answer is, " *Ita lex scripta est.*"   Even thus § 2, ch. 65, p. 83, is written and that is for us the end of the law on the subject.   It is

doubtless true that the legislative dealing with these two different schemes — Lord CAMPBELL's act for those not employes, and sec. 193 of the Constitution and the statutes in pursuance thereof for certain employes named in sec. 193 — has been characterized by the most absurd and irrational confusion of the two statutes one with the other. For example, § 663 of the Revised Code of 1892 was the expression in that Code of Lord CAMPBELL's act relating to persons not employes, and yet ch. 66, p. 84, of the Laws of 1898, which related exclusively to the employes named in sec. 193 of the Constitution, is a copy — an actual copy — of said § 663 of the Ann. Code of 1892, relating alone to persons who were not employes. Again, this very ch. 66 of the Laws of 1898 contains the exact words, as we have said, of § 1510 of the Revised Code of 1880 (§ 663 of the Ann. Code of 1892) as to the person in whose name the suit is to be brought, as to the measure of damages, and as to the distribution of the damages, and these words are interpolated in said ch. 66 between the words of § 3559, Ann. Code 1892, as copied from sec. 193 of the Constitution. Manifestly, the Legislature had no proper conception of the subject-matter of these two different schemes of legislation with which they were dealing, and it is no particular ground of criticism of the Legislature, when the intricacy and difficulties of the subject are considered. But it must certainly be ground for great satisfaction that under the first view which we have above set out, the interpretation which makes sec. 193 self-executing, it will never be, whilst that section remains in force, within the power of the Legislature, by any legislation as to employes, to affect in one way or the other their rights or their remedies, but that those rights and those remedies shall remain, whilst that section of the Constitution lasts, the same exactly, whether restricted or enlarged, as the rights and remedies allowed by law to those not employes.

There is just one other criticism about the *Bussey case* made by Messrs. *Green & Green* in their masterly brief, hereinbefore

mentioned, which we care to notice, in order to point out the fallacy involved in the criticism. It is said by them in that brief that it was inaccurate to say, as we did in the *Bussey case,* that sec. 193 of the Constitution created a new cause of action. We said this, not meaning thereby that there never had been a time in the history of our jurisprudence when the cause of action provided by sec. 193 had not existed; for, manifestly, it had existed at the common law and remained the rule until Lord *Abinger* in 1837 invented, as counsel correctly say, the fellow servant doctrine, in *Priestly* v. *Fowler,* 3 Mees. & W., 1, and in this country until that case was followed, in 1838, by *Murray* v. *S. C. R. R. Co.,* 1 McMul. (S. C.), 385; 36 Am. Dec., 268, and in 1842 by *Farwell* v. *Boston R. R. Co.,* 4 Metc., 49; 38 Am. Dec., 339, and in 1873 in this State by *Railroad Co.* v. *Hughes,* 49 Miss., 258. But during that long sweep of time from 1837 to 1890 the causes of action provided for in sec. 193 had been abolished and did not exist at all in the jurisprudence of England or America; and what we meant in saying that sec. 193 created these new causes of action was that they were, for the first time, by that section made causes of action, and it was proper enough to speak, therefore, of sec. 193 as creating these causes of action in that sense. Causes of action which had existed at the common law, and which had been abolished since 1837 in England and since 1838 in this country, and which had never had in the United States any existence since 1838, may certainly, with all propriety, be spoken of as being created, or, if that term pleases better, re-created, by sec. 193 of the Constitution.

We have given to this cause the most painstaking and protracted and profound consideration. It has engaged the solicitude of each member of the court because of the tremendous scope and sweep of the principles involved in its decision, and we are, after the fullest consideration, thoroughly satisfied of the correctness of all the views which we have in this opinion announced.

It follows that the judgment of the court below was correct, and it is therefore affirmed.

*Affirmed.*